IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CAROLINE FOLTZ, ALICIA MAYNARD, KAYLA BLAIR, SHELBY BONNEVILLE, ASHLEY BUTLER, BRITTNI COLLINS, REILY FINNELLY, AMANDA HOTZ, KAYLEIGH KARNBACH, MOLLIE MOORE, JENNIFER PIERSON, DIANA SAVOSH, MORGAN SCUSE, J. CHRISTINA SMITH, , ELIZABETH TUTTLE on behalf of themselves and all similarly situated individuals, | : : : : : : : : : | Civil Action No. _____ |
| Plaintiffs, | : : | |
| v. | : : | |
| DELAWARE STATE UNIVERSITY, | : : | |
| Defendant. | : : : | |

**COMPLAINT – CLASS ACTION**

Plaintiffs bring this complaint against defendant and in support state:

1.     Student-athletes Caroline Foltz, Alicia Maynard, Kayla Blair, Shelby Bonneville, Brittni Collins, Ashley Butler, Reily Finnelly, Amand Hotz, Kayleigh Karnbach, Mollie Moore, Jennifer Pierson, Diana Savosh, Morgan Scuse, J. Christina Smith, and Elizabeth Tuttle bring this class action against Delaware State University ("Delaware State") to challenge its failure to provide equitable athletic opportunities for female students, including its announced elimination of the women's equestrian team.  Plaintiffs bring this action on behalf of themselves and a class of current, prospective, and future Delaware State female students.  Delaware State's actions have caused harm to plaintiffs and to the plaintiff class and constitute intentional discrimination

based on sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX).

2.     Title IX requires educational institutions receiving federal funds to provide equal opportunity and treatment without regard to gender.  Delaware State has failed to provide its female students with an equal opportunity to participate in athletics.  Specifically, Delaware State has failed to satisfy any of the following measures of compliance with Title IX's mandate to provide equal opportunity:

(a)     providing female student athletes with athletic opportunities at a rate that is substantially proportionate to their undergraduate full-time enrollment rate; or

(b)     demonstrating a history and continuing practice of program expansion responsive to the interests and abilities of the sex that has been historically underrepresented; or

(c)     showing that the interests and abilities of the historically underrepresented sex have been fully and effectively accommodated.

3.     Plaintiffs seek immediate reinstatement of the women's equestrian team as well as additional judicial remedies to ensure defendant's compliance with Title IX.

## JURISDICTION AND VENUE

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(4).  Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the claims arose in and the defendant is located in the State of Delaware and within the District of Delaware.

**PARTIES**

1.      Plaintiff Caroline Foltz is a full-time student and athlete at Delaware State and a resident of Dover, Delaware.

2.      Plaintiff Alicia Maynard is a full-time female student and varsity athlete at defendant Delaware State and a resident of Ridgely, Maryland.  During the school year, plaintiff resides in Dover, Delaware.

3.      Plaintiff Kayla Blair is a full-time female student and varsity athlete at defendant Delaware State and a resident of Mechanicsville, Virginia.  During the school year, plaintiff resides in Dover, Delaware.

4.      Plaintiff Shelby Bonneville is a full-time female student and varsity athlete at defendant Delaware State and a resident of New Windsor, Maryland.  During the school year, plaintiff resides in Dover, Delaware.

5.      Plaintiff Ashley Butler is a full-time female student and varsity athlete at defendant Delaware State and a resident of Woodbridge, Virginia.  During the school year, plaintiff resides in Dover, Delaware.

6.      Plaintiff Brittni Collins is a full-time female student and varsity athlete at defendant Delaware State and a resident of Denton, Maryland.  During the school year, plaintiff resides in Dover, Delaware.

7.      Plaintiff Reily Finnelly is a full-time female student and varsity athlete at defendant Delaware State and a resident of Washington State.  During the school year, plaintiff resides in Dover, Delaware.

8.      Plaintiff Amanda Hotz is a full-time female student and varsity athlete at defendant Delaware State and a resident of Townsend, Delaware.

9.      Plaintiff Kayleigh Karnbach is a full-time female student and varsity athlete at defendant Delaware State and a resident of Dover, Delaware.

10.      Plaintiff Mollie Moore is a full-time female student and varsity athlete at defendant Delaware State and a resident of Wyoming, Delaware.

11.      Plaintiff Jennifer Pierson is a full-time female student and varsity athlete at defendant Delaware State and a resident of Townsend, Delaware.  During the school year, plaintiff resides in Dover, Delaware.

12.      Plaintiff Diana Savosh is a full-time female student and varsity athlete at defendant Delaware State and a resident of Long Island, New York.  During the school year, plaintiff resides in Dover, Delaware.

13.      Plaintiff Morgan Scuse is a full-time female student and varsity athlete at defendant Delaware State and a resident of Smyrna, Delaware.  During the school year, plaintiff resides in Dover, Delaware.

14.      Plaintiff J. Christina Smith is a full-time female student and varsity athlete at defendant Delaware State and a resident of the state of Maryland.  During the school year, plaintiff resides in Dover, Delaware.

15.      Plaintiff Elizabeth Tuttle is a full-time female student and varsity athlete at defendant Delaware State and a resident of Powhattan, Virginia.  During the school year, plaintiff resides in Dover, Delaware.

16.      Defendant Delaware State is a state university with its principal place of business in Dover, Delaware.  Delaware State receives federal financial assistance.

## CLASS ACTION ALLEGATIONS

17.     The individual student plaintiffs bring this action pursuant to Fed. R. Civ. P. 23
(b)(2) on behalf of themselves and on behalf of a class consisting of all present, prospective, and
future Delaware State female students, including currently enrolled, admitted, and future female
students, who participate, seek to participate, or have been deterred or prevented from
participating in or obtaining the benefits of intercollegiate athletics sponsored by Delaware State.

18.     All class members are aggrieved persons under federal civil rights law as a result
of Delaware State's actions, policies, and practices.  The named individual student plaintiffs seek
declaratory and injunctive relief on behalf of themselves and all class members to prevent
defendant from engaging in current and future unlawful conduct and to rectify the effects of
present and past discrimination.

19.     This matter is properly maintainable as a class action pursuant to Fed. R. Civ. P.
23(b)(2) in that:

(a)     The class members are so numerous as to make joinder of all of them
impracticable.  The 20 student-athletes who are current members of Delaware State's equestrian
team are harmed by Delaware State's decision to eliminate their team and are class members.
Upon information in belief, the class also includes at least 15 students Delaware State signed for
the equestrian team for the upcoming 2010-11 academic year before announcing the elimination
the team.  Numerous additional individuals are members of the class, including the 59.4 percent
of the 2,867 student body who are women and for whom Delaware State has failed to provide
equal participation opportunities, and innumerable prospective and future Delaware State
students who are unknown and incapable of being know and who have an interest and the ability

to participate on the equestrian team in the future or who are deterred from enrolling at Delaware State because of discrimination in the athletic program.

(b)     There are questions of law and fact common to the class members.  These common questions of law and fact predominate over any particular questions concerning individual class members.  The common questions include defendant's compliance with Title IX as well as common facts involving Delaware State's athletics' programs and treatment of its female athletes.

(c)     The claims of the named individual student plaintiffs, which involve claims of unequal athletic opportunities, are typical of the claims of the proposed class members.

(d)     The named student plaintiffs will fairly and adequately protect the interests of the class members.  Their lawyers have many years of experience in Title IX actions, class actions, and women's rights litigation.

(e)     Defendant has acted on grounds generally applicable to the class, thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

## FACTS

**Title IX Compliance and Elimination of Women's Equestrian Team by Delaware State**

20.     Defendant Delaware State has failed to provide equal athletic opportunities for women and has provided more and better opportunities for male athletes than for female athletes.

21.     On information and belief, Delaware State has never provided equal athletic opportunities to its female students.

22.     For each and every year from 2002 through 2009, defendant Delaware State has failed to provide equal athletic opportunities to its female students.  According to Delaware State's own published athletic equity reports, during those years, the number of full-time

undergraduate female students far outstripped the female athletic population by at least 15.5 percent and as much as 32 percent.

23.     Delaware State sponsors separate varsity sports teams for men and women.

24.     On information and belief, Delaware State has long sponsored many male varsity sports, including football since 1924, basketball since 1949, baseball since 1958, and cross country, indoor track, outdoor track, soccer and tennis.

25.     On information and belief, Delaware State offered no women's athletic teams until 1976, four years after passage of Title IX, when it first sponsored women's basketball. Delaware State added women's volleyball in 1986, softball in 1993, tennis in 1999, and bowling and soccer in 2002.

26.     Delaware State is required to annually report athletic equity data pursuant to the 1994 Equity in Athletics Disclosure Act (EADA), 20 U.S.C. § 1092(g).

27.     According to Delaware State's EADA report for the 2002-03 academic year, women made up 59 percent of the fulltime undergraduate population but only 32.4 percent of athletes that year.

28.     On information and belief, in October 2004 Delaware State completed a Title IX self-study for National Collegiate Athletic Association ("NCAA") recertification.  The self-study revealed that Delaware State failed to comply with Title IX with respect to participation opportunities, scholarship funding for women's sports, recruiting budget for women's sports, and providing adequate female head coaches.  See Exhibit A (*School Hopes Plan for Improvement Will Satisfy* NCAA, The News Journal Oct. 9. 2004).

29.     On information and belief, following the self-study, Delaware State proposed a five-year plan to address gender equity, which included adding women's field hockey in 2005,

7

women's golf in 2008, and women's lacrosse and swimming in 2009.  See Exhibit B (*DSU Board OKs Gender Equity Plan*, The News Journal Nov. 12, 2004).  None of these teams was ever established.

30.     On information and belief, on November 12, 2004, the Delaware State Board of Trustees approved an annual budget for 2005-06 that included a substantial commitment to addressing gender equity deficiencies in the school's athletic department.  See Exhibit B.

31.     On information and belief, in 2004, Delaware State entered into an agreement with the NCAA committing to add another women's sport to move the university into compliance with Title IX.  See Exhibit C (*DSU to Establish Equestrian Team*, Delaware State Press Release Nov. 30, 2005).

32.     On November 30, 2005, Delaware State announced that it would "take advantage of the resources and partnerships of its college of Agriculture and Related Sciences and establish a Women's Equestrian Team, giving DSU a new and exciting niche in the world of horsemanship competition."  Delaware State heralded this act as one that would "make its sports gender equity shortcomings a thing of the past, and at the same time, establish a distinct athletics program that will set it apart not only from every school in the MEAD and the state, but in the entire Mid Atlantic region." See Exhibit C.

33.     At the time the equestrian team was announced, then-Delaware State Athletic Director Chuck Bell identified a number of advantages for Delaware State in adding the equestrian team, including high numbers to bring the school into compliance with Title IX, a home for young women equestrians in the Mid-Atlantic region, a low cost per student athlete, and an edge in establishing an emerging sport.  See Exhibit D (*Delaware State University to*

8

*Establish Women's Equestrian Team Toward Achieving Historic Gender* Equity, US State News
Nov. 30, 2005).

34.     Defendant Delaware State sponsored a women's equestrian team beginning in the
2006-07 academic year through the 2009-10 academic year.

35.     The women's equestrian team grew in size each year, attracting strong students
from all over the United States who would not have otherwise attended Delaware State, and
performed exceptionally.  The English team has qualified for championships two years in a row.
The team excelled academically, achieving a 3.0 team GPA and a 100 percent graduation rate,
and contributed extensively to the school and surrounding communities.

36.     Delaware State has not added any other women's teams since 2002.

37.     Delaware State has failed to achieve gender equity in its athletic program.  In the
2008-09 academic year, the most recent year for which Delaware State has published an EADA
gender equity report, Delaware State failed to provide women with participation opportunities
that were substantially proportionate to their percentage of the full time undergraduate student
body.  While women comprised 59.4 percent of the 2,867 full-time undergraduate student body,
they filled only 43.9 percent of the athletic opportunities, resulting in a gender equity gap of 15.5
percent.

38.     Despite its continuing failure to provide substantially equal participation
opportunities to its female student body, on January 13, 2010, Delaware State announced the
elimination of the women's equestrian team and the men's tennis team at the end of the 2009-10
academic year.

39.     Delaware State cited budgetary reasons for eliminating the teams.

9

40.     Despite its history of non-compliance with Title IX and the fact that Title IX compliance was the highly touted reason for adding the equestrian team, defendant Delaware State has remained silent about Title IX compliance in the face of cutting of the women's team.

41.     Upon information and belief, the cuts will increase the already substantial disparity between full-time female undergraduates and female athletic opportunities at Delaware State.

42.     Defendant Delaware State lacks a continuing history and ongoing practice of expanding athletic opportunities for its female students.

43.     Delaware State has failed to comply with its 2004 Five Year Plan, eliminating the very team added to address its non-compliance with Title IX, and has not otherwise added a single team for women athletes since 2002.

44.     Delaware State's intercollegiate athletic program does not fully and effectively accommodate the interests and abilities of its women students.

45.     The women's equestrian team is a viable, competitive team; its members enrolled in Delaware State with the expectation of participating on the equestrian team throughout their four years at Delaware State, have protested the elimination of the team, and urgently want the team to continue.

46.     Continuation of the equestrian team is essential to addressing defendant Delaware State's Title IX deficiencies but alone will not satisfy Delaware State's Title IX obligations to provide equal athletic opportunities to its female students.

47.     Delaware State must reinstate the equestrian team and add more women's sports to comply with Title IX.

48.     On information and belief, there are present, prospective, and future female students who have the interest and ability to participate in sports that defendant plans to eliminate or does not sponsor and for which the opportunity for competition exists (e.g., golf, lacrosse, field hockey, swimming, and others).

49.     Defendant Delaware State also has failed to provide women's athletic teams with equitable opportunities for recruiting.  According to the EADA recruiting data submitted by defendant to the U.S. Department of Education Office of Civil Rights since 2003, Delaware State has consistently shortchanged the women's recruiting budgets.  The percent of the recruiting budgets allocated to women's teams in the academic years from 2002-03 to the present are: 2002-03: 25 percent; 2003-04: 8 percent; 2004-05: 9 percent 2005-06: 22 percent; 2007-08: 29 percent.  Delaware State has provided the women's teams with these paltry amounts notwithstanding that almost 60 percent of its student body is female and, as a result of its failure to adhere to the participation requirements of Title IX, only 43.9 percent of its student-athletes are women.

**Impact on Student-Athletes**

50.     The plaintiff student-athletes include two freshman, three sophomores, and seven juniors.  Each of the plaintiff student-athletes now attends Delaware State University and is a member of a varsity team that the University has announced will be eliminated at the end of the current season.  These student-athletes are deeply distressed about the loss of their team.

51.     All of the plaintiff student-athletes elected to attend Delaware State in whole or in part because Delaware State offered them the opportunity to compete on its varsity equestrian team.  For many of the student-athletes, the equestrian program was the most important consideration in their decision to attend Delaware State.  Many turned down offers from other

schools. Some even gave up the opportunity to participate in other sports because of the potential and student athlete camaraderie of the Delaware State's equestrian team.

52.     The plaintiff student-athletes reacted to the news that their teams had been eliminated with shock, sorrow, and disbelief. Their participation on this team is central to their happiness at Delaware State. Many of them regard their athletic achievements at Delaware State as integral to their academic success.

53.     All of the plaintiffs are accomplished athletes. All of the plaintiffs started riding horses at an early age and have devoted many years and long hours developing their equestrian skills and technique. They have excelled in competition and received honors and awards in their sport.

54.     All of the plaintiff student-athletes will continue to be eligible to compete in their sport for anywhere from one to three more years under applicable rules. All would continue to participate on the equestrian team if it were reinstated.

55.     In response to losing their opportunity to play their sport at Delaware State, some of the plaintiff student-athletes are considering transferring to other schools that offer their sport. Some of them have not yet decided what to do. Still others have decided that, at least for the coming year, they will continue to attend Delaware State despite their unhappiness over the loss of their sport because of the difficulties involved in transferring to another school. Some of these students are worried that their credits would not be accepted by another school; or that they would have to attend college for an additional year or more to complete their degree. Others are unable to transfer because the announcement that their team was being eliminated came too late for them to seek financial assistance and they cannot attend another school without such assistance. The students considering transferring face time constraints because they must let

12

their prospective schools know by May 1, 2010, whether they expect to stay at Delaware State or to transfer.

56.     One of the plaintiffs just transferred to Delaware State at the start of the current semester to be part of an NCAA equestrian team.  She did so even though she would lose academic credits acquired at her former school.  During the transfer process, Delaware State never told her that equestrian team would be cut.  Had she known, she would never have transferred.  She has determined that she cannot transfer again because she would have to change her major yet again and lose all of her Delaware State credits.

57.     The student athletes who must remain at Delaware State face loss of athletic financial support as Delaware State has committed to continuing their athletic scholarships only through the end of the 2010-11 academic year.

58.     Continuing their education at Delaware State without the equestrian team places the plaintiffs at risk of losing their equestrian skills, deprives them of the growth, excellence, and successes that come with participating on the same team for four consecutive years, and negatively affects their chances to attain their hopes and dreams of becoming horse trainers, coaches, and other professionals whose work involves equestrian skills.

59.     The cuts in women's sports have affected incoming students, as well as currently enrolled students.  Upon information and belief, before the announcement that the teams would be cut, Delaware State had signed 15 prospective students who had been recruited to participate on the equestrian team for the upcoming 2010-11 academic year.

60.     Delaware State's failure to provide equal opportunity for female students in its athletics program also has harmed female students who do not now play sports, as well as

prospective and incoming female students, by deterring them from participating in athletics and narrowing their athletic options.

61.     As a result of defendant's unlawful actions, plaintiffs and class members have suffered and continue to suffer lost educational opportunities and benefits, including the imminent loss of the opportunity to participate in the eliminated women's team.

## COUNT I:  TITLE IX – EQUAL ATHLETIC OPPORTUNITY

62.     Plaintiffs incorporate by reference paragraphs 1 through 61.

63.     Defendant Delaware State has failed to meet any of the three criteria for compliance with Title IX's equal participation requirement.

64.     Defendant's elimination of a viable women's equestrian team places it even further out of compliance with Title IX.

## COUNT II:  TITLE IX – EQUAL ATHLETIC OPPORTUNITY

65.     Plaintiffs incorporate by reference paragraphs 1 through 64.

66.     Defendant's failure to provide equivalent recruiting resources to the women's athletic programs has deprived female students of equal athletic opportunities.

## COUNT III:  DECLARATION OF DISCRIMINATION UNDER TITLE IX

67.     Plaintiffs incorporate by reference paragraphs 1 through 66.

68.     A justifiable and actual controversy exists before this Court with respect to whether defendant's actions violate Title IX and its applicable regulations, policy interpretation, and clarifications.

69.     Defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX.

70.     Plaintiffs, therefore, are entitled to a declaration that defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

(a)     Certify this action as a class action for declaratory and injunctive relief on behalf of all present, prospective, and future Delaware State female students, including currently enrolled students, students admitted for the 2010-11 academic year, and prospective students, who participate, seek to participate, or have been deterred or prevented from participating in or obtaining the benefits of, intercollegiate athletics sponsored by Delaware State;

(b)     Declare that defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX and its applicable regulations, policy interpretation, and clarifications;

(c)     Issue a temporary restraining order and preliminary injunction that restrains the defendant from continuing to discriminate against female students on the basis of sex and from eliminating the women's varsity equestrian team or any women's athletic opportunities; requires defendant to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of defendant's present, prospective, and future students; requires defendant to provide the women's equestrian team with funding, staffing, recruiting opportunities, and other benefits commensurate with its status as a varsity team; requires defendant to provide equivalent resources and opportunities for recruitment of female student-

athletes; and prohibits defendant from retaliating in any manner against plaintiffs or class members for asserting their legal rights to equal opportunity.

(d)     After a hearing on the merits, issue a final injunction that restrains the defendant from continuing to discriminate against female students on the basis of sex and from eliminating the women's varsity equestrian team or any women's athletic opportunities; requires defendant to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of defendant's present, prospective, and future students; requires defendant to provide the women's equestrian team with funding, staffing, recruiting opportunities and other benefits commensurate with its status as a varsity team; requires defendant to provide equivalent resources and opportunities for recruitment of female student-athletes; and prohibits defendant from retaliating in any manner against plaintiffs or class members for asserting their legal rights to equal opportunity.

(e)     Award plaintiffs their costs and expenses, including an award of reasonable attorneys' fees;

(f)     Award such other and further relief as this Court deems just and proper.


Respectfully submitted,

William J. Burnett

William J. Burnett
Attorney I.D. 4078
FLASTERGREENBERG PC
901 North Market Street
4th Floor
Wilmington, DE 19801

16

Tel 302-351-1910
Fax 302-351-1919

*Terry L. Fromson
WOMEN'S LAW PROJECT
125 S. 9th Street, Suite 300
Philadelphia, PA 19107
Tel: 215-928-5771
Fax: 215-928-9848

*Abbe F. Fletman
FLASTERGREENBERG PC
Four Penn Center
1600 JFK Blvd., Suite 200
Philadelphia, PA 19103
Tel: 215-279-9388
Fax: 267-299-6865

**FOR PLAINTIFFS**

Date:  February __ 2010

*Motion for Admission Pro Hac Vice to be Filed
Promptly

**EXHIBIT A**

10/9/04 News Journal (Wilmington, Del.) C1

2004 WLNR 23188178

News Journal, The (Wilmington, DE)

Copyright 2004 Gannett

October 9, 2004

Section: Sports

DSU will address gender inequity

School hopes plan for improvement will satisfy NCAA

October 9, 2004   The News Journal

DOVER - Delaware State University will inform the NCAA this month that its athletic program has failed to meet federal gender equity requirements, but school officials said they expect their plan for improvement to be sufficient to avoid significant penalties.

NJ

The shortcomings are addressed in DSU's self-study, which each NCAA member school is required to conduct every five years. Furthermore, DSU is going through the NCAA recertification process that must be done every 10 years.

According to Sam Hoff, chairman of DSU's self-study, the school lags in four areas of federal Title IX requirements: proportionality, a comparison of the proportion of athletes who are women with the proportion of students who are women; scholarship funding for women's sports; recruiting budget for women's sports; and female head coaches.

Hoff said the self-study must still be finalized and approved by the DSU board of trustees before being sent to the NCAA by Oct. 18. NCAA officials will then conduct a site visit of the university in February.

Proportionality: In the last reporting period (2002-03) to the U.S. Department of Education, women accounted for 57.5 percent of DSU's student body but just 37 percent of its athletes. Men represented 42.5 percent of the student body but 63 percent of the athletes. Title IX guidelines call for proportional athletic opportunities for men and women.

Hoff said the school has tried to address the shortcoming by adding women's bowling and soccer teams since 2002, with field hockey scheduled to start next fall.

Scholarships: In 2002-03, women received $412,792 in scholarship funding, 28 percent of the total athletic scholarship budget of $1,476,167. Title IX calls for the percentage of scholarship aid to females to be within one percentage point of the percentage of female athletes.

Recruiting budget: In 2002-03, women's sports received 22.9 percent of the recruiting budget. Title IX guidelines do not specify percentages in this

category.

Female coaches: Hoff said DSU must show it has hired, or at least interviewed, female candidates for its head coaching jobs in women's sports. The school has three female head coaches among its nine women's sports. Title IX guidelines do not specify percentages in this category.

Hoff said the cost of complying with gender equity requirements could range from $1 million a year for five years to meet minimum standards based on DSU's projections to $2 million a year over the same span. The source of such funding remains a point of contention in the athletic department, Hoff said, and will ultimately be decided by the board of trustees.

DSU's plan for improvement includes a one-year, $600,000 boost for women's scholarship and recruiting budgets for fiscal 2005. The money, approved Aug. 26 by DSU's board, will come from athletic department revenues, Hoff said.

"[The $600,000] is not enough and the NCAA would see through that," Hoff said. "The alternatives to not doing this are not pleasant. You'd have to cap male sports or cut male [sports] budgets."

To be recertified by the NCAA, DSU must satisfy requirements in six areas: rules compliance, academic integrity, fiscal integrity, welfare, sportsmanship and gender equity. Hoff said DSU is lacking only in terms of gender equity.

"We're doing everything we can to be in compliance with gender equity issues," said Ed Davis, interim athletic director and women's basketball coach. "We are moving in the direction to satisfy most of the requirements."

The decision on recertification could take up to a year. The three possible outcomes are full recertification; recertification with conditions, meaning DSU must fix problems before gaining full status; or suspension of the athletic program for a certain period of time. Hoff said the NCAA does not use specific figures as a standard for compliance but instead bases its decision on the intent a school shows toward fixing problems.

"If you say that you're not in conformity, you can still get [recertified] if there is a plan," Hoff said. "I'm sure it's not a question of ignoring or lack of commitment. It comes down to resources and priorities."

Contact Kristian Pope at kpope@delawareonline.com or 734-7946.

BY THE NUMBERS

Delaware State gender equity, 2002-03

Proportionality

Male students  Female students

1,101 (42.5 percent)  1,488 (57.5 percent)

Athletes

Male athletes  Female athletes

204 (63 percent)  120 (37 percent)

Scholarship budget

Men's budget  Women's budget

$1.06 million (72 percent of total budget) $412,792 (28 percent)

Recruiting budget

Men's budget  Women's budget

$28,844 (77.1 percent of total budget) $8,555 (22.9 percent)


Source: Delaware State University

**EXHIBIT B**

11/12/04 News Journal (Wilmington, Del.) C1

2004 WLNR 23189235

News Journal, The (Wilmington, DE)

Copyright 2004 Gannett

November 12, 2004

Section: Sports

DSU board OKs gender equity plan

November 12, 2004   The News Journal

DOVER - The Delaware State University board of trustees unanimously approved a $300,000 commitment Thursday for women's athletics, the first portion of a proposed $5 million budget increase over five years to address gender equity deficiencies in the school's athletic department.

NJ

The $300,000 is for the 2005-06 school year and will come from the DSU general fund. Last month, DSU informed the NCAA in its recertification report, required every 10 years, that the athletic department has failed to meet federal Title IX regulations.

Under Title IX, institutions receiving federal funding must offer proportionate athletic opportunities for women and men. According to 2002-03 figures, DSU fell short because women account for 57.5 percent of the student body but just 37 percent of the athletes. They also receive a disproportionate share of scholarship funding. Men represent 42.5 percent of the student body and 63 percent of the athletes.

The budget proposed Thursday calls for DSU to spend $5 million from 2005-06 through 2009-10 on women's athletics. The school's general fund would provide $2.8 million, while the athletic department would contribute $2.2 million beginning with a $400,000 contribution in 2006-07. DSU's overall athletic budget for 2004-05 is $5.6 million.

Because the university's budget is approved on a year-to-year basis, the trustees did not vote on the full five-year proposal, board of trustees treasurer Michael Parkowski said.

"There is no choice but to do the five-year plan," Parkowski said. "But to do that, it has to be subject to yearly budget approvals."

Under the five-year budget, the number of women's athletic scholarships would equal that of men (92 each) by 2007-08.

"We've got to comply with the NCAA," board member Richard Barros said. "You can't not do this, or you'd have to close down the athletic department."

Scholarship funding is the biggest portion specified in each year's budget. According to 2002-03 figures, DSU female athletes received $412,792 in scholarships, 28 percent of the total athletic scholarship budget of $1,476,167. Title IX calls for the percentage of scholarship aid to females to be within one percentage point of the percentage of female athletes.

The women's scholarship budget would increase by $143,450 in 2005-06. The remaining $156,550 will go to various aspects, including the funding of a new field hockey team, increasing the women's recruiting budget, the hiring of three women's assistant coaches and salary increases for the soccer and basketball coaches.

The trustees did not address how the athletic department would come up with its share of the budget increase, starting with $400,000 in 2006-07. DSU reported $330,288 in athletic revenue in 2002-03.

"This plan allows us to get ourselves together and get cracking for 2006," said Tripp Keister, DSU associate athletic director for development. "It gives us time to put our plan together to increase revenue."

The budget wasn't met with total optimism, however. DSU sports sciences professor Tomas Butler told the trustees he was concerned that funding for athletics would be addressed at a time the school is short on full-time professors, according to him.

"I don't understand where our priorities are," Butler said. "You can talk about revenue streams from athletics, but [revenue is] always going to be negative with athletics."

Contact Kristian Pope at kpope@delawareonline.com or 734-7946.

DSU PROPOSED BUDGET FOR WOMEN'S ATHLETICS

2005-06: $300,000 (all from DSU general fund); major expenditures: $143,450 for scholarships.

2006-07: $600,000 (general fund), $400,000 ( athletic department); major expenditures: $295,560 for scholarships.

2007-08: $700,000 (general fund), $600,000 ( athletic department); major expenditures: $270,660 for scholarships, $207,000 for women's coaches salaries, $105,000 for athletic administrative personnel.

2008-09: $600,000 (general fund), $600,000 ( athletic department); major expenditures: $216,528 for scholarships, unspecified amount to add women's golf team.

2009-10: $600,000 (general fund), $600,000 ( athletic department); major expenditures: unspecified; possible addition of women's lacrosse, swimming teams.

Source: Delaware State University

**EXHIBIT C**

| # | Sport | Article |
|---|-------|---------|
| 1 | MXC | DSU TO ESTABLISH WOMEN'S EQUESTRIAN TEAM<br>11/30/2005 |

## DSU TO ESTABLISH WOMEN'S EQUESTRIAN TEAM

DOVER, Del. – DSU is about to make its sports gender equity shortcomings a thing of the past, and at the same time establish a distinct athletics program that will set it apart not only from every school in the MEAC and the state, but in the entire Mid-Atlantic Region.

The University will take advantage of the resources and partnerships of its College of Agriculture and Related Sciences and establish a Women's Equestrian Team, giving DSU a new and exciting niche in the world of horsemanship competition.

The University's Department of Athletics will utilize the College of Ag's 192-acre farm property located just outside of Smyrna as the home of the horse operation that will conduct the equestrian program.

"Looking at the demographics of the Delaware and surrounding states, the agriculture nature of the area, and the fact that this is a land grant institution with a strong College of Agriculture, we came to conclusion that an equestrian team would be good for the institution and College of Agriculture, and would satisfy future and present Title IX requirements," said DSU Athletics Director **Chuck Bell**.

Last year, the university and the NCAA entered into an agreement that DSU would establish a new sport for women to bring the university into compliance with Title IX, which requires that universities and colleges provide equal opportunities for women to compete in collegiate sports competition. The DSU Board of Trustees passed a resolution earlier this year that committed funding to address the pressing need for gender equity in the institution's athletics programs.

Mr. Bell notes the advantages come with an equestrian program:

• The Equestrian Team – which typically have 45 members or more – will bring DSU under Title IX compliance. Because the other options are smaller teams, it would take two or three of those other sports to add enough women student-athletes participants to comply with gender equity requirements.

• With no other collegiate equestrian teams in Mid-Atlantic region, it would provide a closer-to-home institution for young women in this part of the country who would like to compete in this sport – and a university where they can even bring their horse.

• The cost per student-athlete is attractive, including low start up cost.

• The NCAA allows an equestrian team to implement an equivalency scholarship system. This allows a school to split the overall amount of the sport's available scholarship money among as many student-athletes as it wants.

• It will be the only institution in the Mid-Eastern Athletics Conference to have an

equestrian team – and give DSU the distinct edge in the establishment of the emerging sport among Historically Black Colleges and Universities and regional universities.

Mr. Bell said that DSU considered other women's sport possibilities – golf, field hockey, rifling – and the equestrian sport stood out as the best choice to fulfill the university's Title IX requirements.

"This satisfied our gender equity requirement for the present and future in a way that serves the people of this state and surrounded states," Mr. Bell said. "It is a perfect marriage with our College of Agriculture and Related Sciences."

The new sport also meshes with DSU President **Allen L. Sessoms'** goal to increase the emphasis on participation by female student-athletes.

"We have been clearly committed to bringing about the gender equity that had been neglected at DSU for decades," Dr. Sessoms said. "The effort to develop an equestrian team will result in the realization of our vision that equity in sports will be a bedrock in the future of athletics at Delaware State University."

Mr. Bell said that searches for equestrian head coach and assistant coaches will commence immediately. He added that the university's goal is to have a team developed in time to compete in the fall of 2006.

**EXHIBIT D**

11/30/05 USSTNEWS (No Page)

11/30/05 US St. News (Pg. Unavail. Online)

2005 WLNR 22631886

US State News

Copyright 2005 US Fed News (HT Syndication)

November 30, 2005

DELAWARE STATE UNIVERSITY TO ESTABLISH WOMEN'S EQUESTRIAN TEAM TOWARD
ACHIEVING HISTORIC GENDER EQUITY

DOVER, Del., Nov. 30 -- The Delaware State University issued the following news
release:

Delaware State University is adding a new women's sports that will play a major
role in making its sports gender equity shortcomings a thing of the past, and at
the same time establish a distinct athletics program that will set it apart not
only from every school in the MEAC and the state, but in the entire Mid-Atlantic
Region.

The University will take advantage of the resources and partnerships of its
College of Agriculture and Related Sciences and establish a Women's Equestrian
Team, giving DSU a new and exciting NCAA niche in the world of horsemanship
competition.

The University's Department of Athletics will construct a facility that will be
located on a plot of land at the College of Ag 's 192-acre farm property located
just outside of Smyrna as the home of the horse operation that will conduct the
equestrian program.

"Looking at the demographics of Delaware and surrounding states, the agricultural
nature of the area, and the fact that this is a land grant institution with a
strong College of Agriculture, we came to the conclusion that an equestrian team
would be good for the institution and College of Agriculture, and would satisfy
future and present Title IX requirements," said DSU Athletics Director Chuck Bell.
He added that the sport may also attract more students to the majors offered by
the College of Agriculture.

Last year, the university and the NCAA entered into an agreement that DSU would
establish a new sport for women to move the university into closer compliance with
Title IX, which requires that universities and colleges provide equal
opportunities for women to compete in collegiate sports competition. The DSU Board
of Trustees passed a resolution earlier this year that committed funding to
address the pressing need for gender equity in the institution's athletics
programs.

Mr. Bell notes the advantages that come with an equestrian program:

* The Equestrian Team - which typically has 45 to 100 members - could bring DSU
under Title IX compliance. Because the other options are smaller teams, it would
take three or four of those other sports to add enough women student-athlete

29

participants to comply with gender equity requirements.

 * With no other collegiate equestrian teams in Mid-Atlantic region, it would provide a closer-to-home institution for young women in this part of the country who would like to compete in this sport - and a university where they can even bring their horse.

 * The cost per student-athlete is attractive, including low start up cost.  The NCAA allows an equestrian team to implement an equivalency scholarship system. This allows a school to split the overall amount of the sport's available scholarship money among as many student-athletes as it wants.

 * It will be the only institution in the Mid-Eastern Athletic Conference to have an equestrian team - and give DSU the distinct edge in the establishment of the emerging sport among Historically Black Colleges and Universities and regional universities.  Mr. Bell said that DSU considered other women's sport possibilities - golf, field hockey, rifle - and the equestrian sport stood out as the best choice to fulfill the university's Title IX requirements.

 "This satisfied our gender equity requirement for the present and possibly the future in a way that serves the people of this state and surrounding states," Mr. Bell said. "It is a perfect marriage with our College of Agriculture and Related Sciences."

 The new sport also meshes with DSU President Allen L. Sessoms' goal to increase the emphasis on participation by female student-athletes.

 "We have been clearly committed to bringing about the gender equity that had been neglected at DSU for decades," Dr. Sessoms said. "The effort to develop an equestrian team will result in the realization of our vision that equity in sports will be a bedrock in the future of athletics at Delaware State University."

 Mr. Bell said that DSU will immediately commence its searches for equestrian head coach and assistant coaches. He added that the university's goal is to have a team developed in time to compete in the fall of 2006 and that an additional women's sport could also be added in the future.