IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, BRITTNI COLLINS, ERIN ENGARD, AMANDA HOTZ, BREANN HUYETT, VICTORIA KEEN DIANA SAVOSH, on behalf of themselves and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DELAWARE STATE UNIVERSITY,<br><br>Defendant. | Civil Action No. 10-149 (JJF/LPS)<br><br>CLASS ACTION |

**AMENDED COMPLAINT – CLASS ACTION**

Plaintiffs bring this amended complaint against defendant Delaware State University ("DSU") and in support state:

1. Student-athletes Caroline Foltz, Shelby Bonneville, Brittni Collins, Erin Engard, Amanda Hotz, Breann Huyett, Victoria Keen, and Diana Savosh bring this class action against DSU to challenge its failure to provide equitable athletic opportunities for female students, including its announced elimination of the women's equestrian team. Plaintiffs bring this action on behalf of themselves and a class of current, prospective, and future DSU female students. DSU's actions have caused harm to plaintiffs and to the plaintiff class and constitute intentional discrimination based on sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX).

2. Title IX requires educational institutions receiving federal funds to provide equal opportunity and treatment without regard to gender. DSU has failed to provide its female students with an equal opportunity to participate in athletics. Specifically, DSU has failed to satisfy any of the following measures of compliance with Title IX's mandate to provide equal opportunity:

> (a) providing female students with athletic opportunities at a rate that is substantially proportionate to their undergraduate full-time enrollment rate; or
>
> (b) demonstrating a history and continuing practice of program expansion responsive to the interests and abilities of the sex that has been historically underrepresented; or
>
> (c) showing that the interests and abilities of the historically underrepresented sex have been fully and effectively accommodated.

3. Plaintiffs seek immediate reinstatement of the women's equestrian team as well as additional judicial remedies to ensure defendant's compliance with Title IX.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(4). Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the claims arose in and the defendant is located in the State of Delaware and within the District of Delaware.

## PARTIES

6. Plaintiff Caroline Foltz is a full-time female student and varsity athlete at defendant DSU and a resident of Dover, Delaware.

7. Plaintiff Shelby Bonneville is a full-time female student and varsity athlete at defendant DSU and a resident of New Windsor, Maryland.  During the school year, plaintiff resides in Dover, Delaware.

8. Plaintiff Brittni Collins is a full-time female student and varsity athlete at defendant DSU and a resident of Denton, Maryland.  During the school year, plaintiff resides in Dover, Delaware.

9. Plaintiff Erin Engard is a female student who has been accepted as a full time student and varsity athlete at defendant DSU for the 2010-11 academic year and a resident of Shamong, New Jersey.

10. Plaintiff Amanda Hotz is a full-time female student and varsity athlete at defendant DSU and a resident of Townsend, Delaware.

11. Plaintiff Breann Huyett is a full time female student and varsity athlete at defendant DSU and resident of Narvon, Pennsylvania.  During the school year, plaintiff resides in Dover, Delaware.

12. Plaintiff Victoria Keen is a female student who has been accepted as a full time student and varsity athlete at defendant DSU for the 2010-11 academic year and a resident of Woodstown, New Jersey.

13. Plaintiff Diana Savosh is a full-time female student and varsity athlete at defendant DSU and a resident of Long Island, New York.  During the school year, plaintiff resides in Dover, Delaware.

14.     Defendant DSU is a state university with its principal place of business in Dover, Delaware.  DSU receives federal financial assistance.

## CLASS ACTION ALLEGATIONS

15.     The individual student plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) on behalf of themselves and on behalf of a class consisting of all present, prospective, and future DSU female students, including currently enrolled, admitted, and future female students, who participate, seek to participate, or have been deterred or prevented from participating in or obtaining the benefits of intercollegiate athletics sponsored by DSU.

16.     All class members are aggrieved persons under federal civil rights law as a result of DSU's actions, policies, and practices.  The named individual student plaintiffs seek declaratory and injunctive relief on behalf of themselves and all class members to prevent defendant from engaging in current and future unlawful conduct and to rectify the effects of present and past discrimination.

17.     This matter is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) in that:

(a)     The class members are so numerous as to make joinder of all of them impracticable.  The 20 student-athletes who are current members of DSU's equestrian team are harmed by DSU's decision to eliminate their team and are class members.  The class also includes at least 15 students DSU signed for the equestrian team for the upcoming 2010-11 academic year before announcing the elimination the team.  Numerous additional individuals are members of the class, including the 59.4 percent of the 2,867 student body who are women and for whom DSU has failed to provide equal participation opportunities, and innumerable prospective and future DSU students who are unknown and incapable of being known and who

have an interest and the ability to participate in equestrian and other varsity intercollegiate athletics in the future or who are deterred from enrolling at DSU because of discrimination in the athletic program.

(b) There are questions of law and fact common to the class members. These common questions of law and fact predominate over any particular questions concerning individual class members. The common questions include defendant's compliance with Title IX as well as common facts involving DSU's athletics' programs and treatment of its female athletes.

(c) The claims of the named individual student plaintiffs, which involve claims of unequal athletic opportunities, are typical of the claims of the proposed class members.

(d) The named student plaintiffs will fairly and adequately protect the interests of the class members. Their lawyers have many years of experience in Title IX actions, class actions, and women's rights litigation.

(e) Defendant has acted on grounds generally applicable to the class, thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

## **FACTS**

### **Title IX Compliance and Elimination of Women's Equestrian Team by DSU**

18. Defendant DSU has failed to provide equal athletic opportunities for women and has provided more and better opportunities for male students than for female students.

19. On information and belief, DSU has never provided equal athletic opportunities to its female students.

20. For each and every year from 2002 through 2009, defendant DSU has failed to provide equal athletic opportunities to its female students. According to DSU's own published

athletic equity reports, during those years, the number of full-time undergraduate female students far outstripped the female athletic population by at least 15.5 percent and as much as 32 percent.

21. DSU sponsors separate varsity sports teams for men and women.

22. On information and belief, DSU has long sponsored many male varsity sports, including football since 1924, basketball since 1949, baseball since 1958, and cross country, indoor track, outdoor track, soccer and tennis.

23. On information and belief, DSU offered no women's athletic teams until 1976, four years after passage of Title IX, when it first sponsored women's basketball. DSU added women's volleyball in 1986, softball in 1993, tennis in 1999, and bowling and soccer in 2002.

24. DSU is required to annually report athletic equity data pursuant to the 1994 Equity in Athletics Disclosure Act (EADA), 20 U.S.C. § 1092(g).

25. According to DSU's EADA report for the 2002-03 academic year, women made up 59 percent of the fulltime undergraduate population but only 32.4 percent of athletes that year.

26. On information and belief, in October 2004 DSU completed a Title IX self-study for National Collegiate Athletic Association ("NCAA") recertification. The self-study revealed that DSU failed to comply with Title IX with respect to participation opportunities, scholarship funding for women's sports, recruiting budget for women's sports, and providing adequate female head coaches. *See* Exhibit A (*School Hopes Plan for Improvement Will Satisfy* NCAA, The News Journal Oct. 9. 2004).

27. Following the self-study, DSU proposed a five-year plan to address gender equity, which included adding women's field hockey in 2005, women's golf in 2008, and women's

6

lacrosse and swimming in 2009.  *See* Exhibit B (*DSU Board OKs Gender Equity Plan*, The News Journal Nov. 12, 2004).  None of these teams was ever established.

28. On November 12, 2004, the DSU Board of Trustees approved an annual budget for 2005-06 that included a substantial commitment to addressing gender equity deficiencies in the school's athletic department.  *See* Exhibit B.

29. In 2004, DSU entered into an agreement with the NCAA committing to add another women's sport to move the university into compliance with Title IX.  *See* Exhibit C (*DSU to Establish Equestrian Team*, DSU Press Release Nov. 30, 2005).

30. On November 30, 2005, DSU announced that it would "take advantage of the resources and partnerships of its college of Agriculture and Related Sciences and establish a Women's Equestrian Team, giving DSU a new and exciting niche in the world of horsemanship competition."  DSU heralded this act as one that would "make its sports gender equity shortcomings a thing of the past, and at the same time, establish a distinct athletics program that will set it apart not only from every school in the MEAC and the state, but in the entire Mid Atlantic region." *See* Exhibit C.

31. At the time the equestrian team was announced, then-DSU Athletic Director Chuck Bell identified a number of advantages for DSU in adding the equestrian team, including high numbers to bring the school into compliance with Title IX, a home for young women equestrians in the Mid-Atlantic region, a low cost per student athlete, and an edge in establishing an emerging sport.  *See* Exhibit D (*Delaware State University to Establish Women's Equestrian Team Toward Achieving Historic Gender* Equity, US State News Nov. 30, 2005).

32. Defendant DSU sponsored a women's equestrian team beginning in the 2006-07 academic year through the 2009-10 academic year.

33. The women's equestrian team grew in size each year, attracting strong students from all over the United States who would not have otherwise attended DSU, and performed exceptionally. The English team has qualified for championships two years in a row. The team excelled academically, achieving a 3.0 team GPA and a 100 percent graduation rate, and contributed extensively to the school and surrounding communities.

34. DSU has not added any other women's teams since 2002.

35. DSU has failed to achieve gender equity in its athletic program. In the 2008-09 academic year, the most recent year for which DSU has published an EADA gender equity report, DSU failed to provide women with participation opportunities that were substantially proportionate to their percentage of the full time undergraduate student body. While women comprised 59.4 percent of the 2,867 full-time undergraduate student body, they filled only 43.9 percent of the athletic opportunities, resulting in a gender equity gap of 15.5 percent.

36. Despite its continuing failure to provide substantially equal participation opportunities to its female student body, on January 13, 2010, DSU announced the elimination of the women's equestrian team at the end of the 2009-10 academic year.

37. DSU cited budgetary reasons for eliminating the team.

38. Despite its history of non-compliance with Title IX and the fact that Title IX compliance was the highly touted reason for adding the equestrian team, defendant DSU has remained silent about Title IX compliance in the face of cutting of the women's team.

39. The cuts will increase the already substantial disparity between full-time female undergraduates and female athletic opportunities at DSU.

40. Defendant DSU lacks a continuing history and ongoing practice of expanding athletic opportunities for its female students.

41. DSU has failed to comply with its 2004 Five Year Plan, eliminating the very team added to address its non-compliance with Title IX, and has not otherwise added a single team for women athletes since 2002.

42. DSU's intercollegiate athletic program does not fully and effectively accommodate the interests and abilities of its women students.

43. The women's equestrian team is a viable, competitive team; its members enrolled in DSU with the expectation of participating on the equestrian team throughout their four years at DSU, have protested the elimination of the team, and urgently want the team to continue.

44. Continuation of the equestrian team is essential to addressing defendant DSU's Title IX deficiencies but alone will not satisfy DSU's Title IX obligations to provide equal athletic opportunities to its female students.

45. DSU must reinstate the equestrian team and add more women's sports to comply with Title IX.

46. On information and belief, there are present, prospective, and future female students who have the interest and ability to participate in sports that defendant plans to eliminate or does not sponsor and for which the opportunity for competition exists (e.g., golf, lacrosse, field hockey, swimming, and others).

47. Defendant DSU also has failed to provide women's athletic teams with equitable opportunities for recruiting. According to the EADA recruiting data submitted by defendant to the U.S. Department of Education Office of Civil Rights since 2003, DSU has consistently shortchanged the women's recruiting budgets. The percent of the recruiting budgets allocated to women's teams in the academic years from 2002-03 to the present are: 2002-03: 25 percent; 2003-04: 8 percent; 2004-05: 9 percent 2005-06: 22 percent; 2007-08: 29 percent. DSU has

9

provided the women's teams with these paltry amounts notwithstanding that almost 60 percent of its student body is female and, as a result of its failure to adhere to the participation requirements of Title IX, only 43.9 percent of its student-athletes are women.

**Impact on Student-Athletes**

48. The plaintiffs are student-athletes and include, as of the fall semester of the 2010-2011 academic year, two freshmen, three sophomores, two juniors, and one senior. Each of the plaintiff student-athletes now attends or will attend DSU and is a member of a varsity team that the University has announced will be eliminated at the end of the current season. These student-athletes are deeply distressed about the loss of their team.

49. All of the plaintiff student-athletes elected to attend DSU in whole or in part because DSU offered them the opportunity to compete on its varsity equestrian team. For many of the student-athletes, the equestrian program was the most important consideration in their decision to attend DSU. Many turned down offers from other schools. Some even gave up the opportunity to participate in other sports because of the potential and student-athlete camaraderie of the DSU's equestrian team.

50. The plaintiff student-athletes reacted to the news that their teams had been eliminated with shock, sorrow, and disbelief. Their participation on this team is central to their happiness at DSU. Many of them regard their athletic achievements at DSU as integral to their academic success.

51. All of the plaintiffs are accomplished athletes. All of the plaintiffs started riding horses at an early age and have devoted many years and long hours developing their equestrian skills and technique. They have excelled in competition and received honors and awards in their sport.

52. All of the plaintiff student-athletes will continue to be eligible to compete in their sport for anywhere from one to four more years under applicable rules. All would continue to participate on the equestrian team if it were reinstated.

53. In response to losing their opportunity to play their sport at DSU, some of the plaintiff student-athletes are considering transferring to other schools that offer their sport. Some of them have not yet decided what to do. Still others have decided that, at least for the coming year, they will continue to attend DSU despite their unhappiness over the loss of their sport because of the difficulties involved in transferring to another school. Some of these students are worried that their credits would not be accepted by another school; or that they would have to attend college for an additional year or more to complete their degree. Others are unable to transfer because the announcement that their team was being eliminated came too late for them to seek financial assistance and they cannot attend another school without such assistance. The students considering transferring face time constraints because they must let their prospective schools know by May 1, 2010, whether they expect to stay at DSU or to transfer.

54. One of the plaintiffs just transferred to DSU at the start of the current semester to be part of an NCAA equestrian team. She did so even though she would lose academic credits acquired at her former school. During the transfer process, DSU never told her that equestrian team would be cut. Had she known, she would never have transferred. She has determined that she cannot transfer again because she would have to change her major yet again and lose all of her DSU credits.

55. Continuing their education at DSU without the equestrian team places the plaintiffs at risk of losing their equestrian skills, deprives them of the growth, excellence, and successes that come with participating on the same team for four consecutive years, and

negatively affects their chances to attain their hopes and dreams of becoming horse trainers, coaches, and other professionals whose work involves equestrian skills.

56. The cuts in women's sports have affected incoming students, as well as currently enrolled students. Upon information and belief, before the announcement that the teams would be cut, 15 prospective students had been recruited to participate and decided to participate on the equestrian team for the upcoming 2010-11 academic year.

57. DSU's failure to provide equal opportunity for female students in its athletics program also has harmed female students who do not now play sports, as well as prospective and incoming female students, by deterring them from participating in athletics and narrowing their athletic options.

58. As a result of defendant's unlawful actions, plaintiffs and class members have suffered and continue to suffer lost educational opportunities and benefits, including the imminent loss of the opportunity to participate in the eliminated women's team.

### COUNT I:  TITLE IX – EQUAL ATHLETIC OPPORTUNITY

59. Plaintiffs incorporate by reference paragraphs 1 through 58.

60. Defendant DSU has failed to meet any of the three criteria for compliance with Title IX's equal participation requirement.

61. Defendant's elimination of a viable women's equestrian team places it even further out of compliance with Title IX.

### COUNT II:  TITLE IX – EQUAL ATHLETIC OPPORTUNITY

62. Plaintiffs incorporate by reference paragraphs 1 through 61.

63. Defendant's failure to provide equivalent recruiting resources to the women's athletic programs has deprived female students of equal athletic opportunities.

### COUNT III: DECLARATION OF DISCRIMINATION UNDER TITLE IX

64.     Plaintiffs incorporate by reference paragraphs 1 through 63.

65.     A justifiable and actual controversy exists before this Court with respect to whether defendant's actions violate Title IX and its applicable regulations, policy interpretation, and clarifications.

66.     Defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX.

67.     Plaintiffs, therefore, are entitled to a declaration that defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX.

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

(a)     Certify this action as a class action for declaratory and injunctive relief on behalf of all present, prospective, and future DSU female students, including currently enrolled students, students admitted for the 2010-11 academic year, and prospective students, who participate, seek to participate, or have been deterred or prevented from participating in or obtaining the benefits of, intercollegiate athletics sponsored by DSU;

(b)     Declare that defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX and its applicable regulations, policy interpretation, and clarifications;

(c)     Issue a preliminary injunction that restrains the defendant from continuing to discriminate against female students on the basis of sex and from eliminating the women's varsity equestrian team or any women's athletic opportunities; requires defendant to provide

females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of defendant's present, prospective, and future students; requires defendant to provide the women's equestrian team with funding, staffing, recruiting opportunities, and other benefits commensurate with its status as a varsity team; requires defendant to provide equivalent resources and opportunities for recruitment of female student-athletes; and prohibits defendant from retaliating in any manner against plaintiffs or class members for asserting their legal rights to equal opportunity.

    (d) After a hearing on the merits, issue a final injunction that restrains the defendant from continuing to discriminate against female students on the basis of sex and from eliminating the women's varsity equestrian team or any women's athletic opportunities; requires defendant to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of defendant's present, prospective, and future students; requires defendant to provide the women's equestrian team and any new varsity athletic teams with funding, staffing, recruiting opportunities and other benefits commensurate with their status as a varsity team; requires defendant to provide equivalent resources and opportunities for recruitment of female student-athletes; and prohibits defendant from retaliating in any manner against plaintiffs or class members for asserting their legal rights to equal opportunity.

    (e) Award plaintiffs their costs and expenses, including an award of reasonable attorneys' fees.

    (f)  Award such other and further relief as this Court deems just and proper.

            Respectfully submitted,

Date: June 7, 2010      _/s/ Joanne Pileggi Pinckney_____
            Joanne Pileggi Pinckney (Id. No. 3344)
            PINCKNEY, HARRIS & WEIDINGER, LLC
            1220 N. Market Street, Suite 950
            Wilmington, DE 19801
            Tel. 302-504-1497
            Fax 302-655-5213

            Terry L. Fromson
            WOMEN'S LAW PROJECT
            125 S. 9th Street, Suite 300
            Philadelphia, PA 19107
            Tel: 215-928-5771
            Fax: 215-928-9848

            Abbe F. Fletman
            FLASTERGREENBERG PC
            Four Penn Center
            1600 JFK Blvd., Suite 200
            Philadelphia, PA 19103
            Tel: 215-279-9388
            Fax: 267-299-6865

            *Attorneys for plaintiffs*