IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, | : |
| BRITTNI COLLINS, ERIN ENGARD, | : |
| AMANDA HOTZ, BREANN HUYETT, | : |
| VICTORIA KEEN, DIANA SAVOSH, | : |
| on behalf of themselves and all similarly | : |
| situated individuals, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :  Civil Action No. 10-149-LPS |
| | : |
| DELAWARE STATE UNIVERSITY, | : |
| | : |
| Defendant. | : |

**MEMORANDUM ORDER**

Student-athletes Caroline Foltz, Shelby Bonneville, Brittni Collins, Erin Engard, Amanda

Hotz, Breann Huyett, Victoria Keen, and Diana Savosh (collectively, "Plaintiffs") bring this suit,

styled as a proposed class action, on behalf of themselves and a class of current, prospective, and

future female students of defendant Delaware State University ("DSU"). Plaintiffs allege that

certain actions by DSU have harmed Plaintiffs and the proposed plaintiff class. Specifically,

Plaintiffs contend that DSU has intentionally discriminated based on sex in violation of Title IX

of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 (hereinafter "Title IX"). (D.I. 1;

D.I. 95)

Presently pending before the Court is Plaintiffs' Motion for Class Certification (the

"Motion"), requesting that the Court certify this case to proceed as a class action and appoint

1

Plaintiffs' counsel as class counsel. (D.I. 54) For the reasons discussed below, the Court will grant the Motion.[1]

## BACKGROUND

On February 23, 2010, fifteen of the twenty-one members of DSU's women's equestrian team (hereinafter the "Original Plaintiffs") initiated this action, on behalf of themselves and others similarly situated, against DSU for failure to provide equitable athletic opportunities to its female students in violation of Title IX. (D.I. 1)[2] These claims arise out of DSU's decision to eliminate the women's equestrian team at the conclusion of the 2009-10 academic year and the school's alleged failure to provide female athletes at DSU equal opportunities to participate in varsity intercollegiate athletics. (Id.)

On March 1, 2010, the Original Plaintiffs filed a motion for a temporary restraining order and preliminary injunction, seeking to enjoin DSU from eliminating the equestrian team. (D.I. 7) On April 7, 2010, after expedited discovery and mediation with Magistrate Judge Thynge, the Court approved the parties' jointly-proposed Consent Order. (D.I. 53) Pursuant to the Consent Order, DSU may not eliminate the equestrian team until the end of the 2010-11 academic year. The Consent Order mooted the Original Plaintiffs' request for preliminary relief.

Thereafter, without opposition from DSU, the Court permitted Plaintiffs to amend their

---

[1]The parties consented to the jurisdiction of a magistrate judge on March 19, 2010. (D.I. 33)

[2]The Original Plaintiffs were Caroline Foltz, Alicia Maynard, Kayla Blair, Shelby Bonneville, Ashley Butler, Brittni Collins, Reily Finnelly, Amanda Hotz, Kayleigh Kambach, Mollie Moore, Jennifer Pierson, Diana Savosh, Morgan Scuse, J. Christina Smith, and Elizabeth Tuttle.

2

complaint (the "Complaint") to reflect the withdrawal and addition of certain named plaintiffs.

(D.I. 84; D.I. 85; D.I. 94; D.I. 95)  Specifically, plaintiffs Karnbach, Scuse, Smith, Maynard,

Blair, Butler, Moore, Pierson and Tuttle, all of whom were juniors or seniors during the 2009-10

academic year and are now guaranteed the opportunity to participate on the equestrian team until

their expected graduation date, withdrew as plaintiffs.  Additionally, plaintiff Reily Finnelly

transferred to another college, and, consequently, also withdrew as a plaintiff.  Finally, three

additional student athletes – Breann Huyett, a sophomore at DSU, and Erin Engard and Victoria

Keen, both incoming DSU freshmen – joined the lawsuit as plaintiffs.  By their Complaint,

Plaintiffs seek, among other requested relief, issuance of "a final injunction that restrains [DSU]

from continuing to discriminate against female students on the basis of sex and from eliminating

the women's varsity equestrian team or any women's athletic opportunities [and] requires [DSU]

to provide females with an equal opportunity to participate in varsity intercollegiate athletics."

(D.I. 95 at 14)

         Plaintiffs seek class action certification pursuant to Rules 23(a) and 23(b)(2) of the

Federal Rules of Civil Procedure.  Plaintiffs propose the following class definition:

> [A]ll present, prospective, and future DSU female students, including currently
> enrolled students, students admitted for the 2010-11 academic year, and
> prospective students, who participate, seek to participate, or have been deterred or
> prevented from participating in or obtaining the benefits of, intercollegiate
> athletics sponsored by DSU.

(D.I. 95 at 13)[3]  Additionally, Plaintiffs seek appointment of their counsel as class counsel,

---

[3]This is the definition that appears in the Complaint.  Plaintiffs have at times proposed
other class definitions, which are not materially different.  (D.I. 54 at 1; D.I. 55 at 2)

3

pursuant to Federal Rule of Civil Procedure 23(g).

DSU opposes Plaintiffs' Motion.  DSU contends this matter is not properly maintainable as a class action under Rule 23.  (D.I. 80)

## LEGAL STANDARDS

### A.   Class Certification

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal quotation marks omitted).  In reviewing a motion for class certification, such "rigorous analysis may include a preliminary inquiry into the merits."  *Id.* at 317 (internal quotation marks omitted).  While the court's "findings for the purpose of class certification are conclusive on that topic, they do not bind the fact-finder on the merits."  *Id.* at 318.

Class certification under Rule 23 has two principal components.  First, the party seeking class certification must establish the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

*Id.* at 309 n.6 (internal quotation marks omitted).  Second, "[i]f all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified," pursuant to Rule 23(b)(1)-(3).  *Id.*  Here, Plaintiffs seek to prosecute this action under Rule

4

23(b)(2), which applies when a "party opposing the class has acted or refused to act on grounds that apply generally to the class."

Importantly, "a class may not be certified without a finding that each Rule 23 requirement is met." *Hydrogen Peroxide*, 552 F.3d at 310. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Id.* at 320.

## B.     **Appointment of Class Counsel**

Pursuant to Rule 23(g)(1), "a court that certifies a class must appoint class counsel." In appointing class counsel, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

## DISCUSSION

## A.     **Class Certification**

After conducting a rigorous analysis of the record the parties have created, the Court finds that Plaintiffs have met, by a preponderance of the evidence, each of the requirements of Rule 23. Each is discussed in turn below.

### 1.     **Numerosity**

The first prerequisite to class certification is numerosity. There is no "numerical

5

threshold" to satisfy the numerosity prong; instead the judicial determination is "based upon common sense." *Walling v. Brady*, 1995 WL 447658, at *2 (D. Del. July 19, 1995).

Plaintiffs' proposed class consists of "all present, prospective, and future DSU female students . . . who participate, seek to participate, or have been deterred or prevented from participating in or obtaining the benefits of, intercollegiate athletics sponsored by DSU." In 2009-10, the number of female students attending DSU was 1893, of whom 181 participated in intercollegiate athletics. (D.I. 43 at A26; D.I. 80 at 3)[4] The number of prospective and future female students at DSU cannot be calculated with any specificity but is, indisputably, very large.

DSU contends that the numerosity requirement is not satisfied because, in DSU's view, the only class that could even conceivably be certified would consist of just the present and prospective members of the women's equestrian team, not all current and future female students or athletes at DSU. DSU emphasizes that the team for 2010-11 will consist of just 19 members (six of whom are graduating seniors and, hence, not members of the proposed class), and only about five new members could be expected to be added each year. (D.I. 80 at 16; D.I. 81 at B30-A & B41)[5] The Court need not resolve whether DSU's "proposed class" would be sufficiently numerous because the class Plaintiffs have proposed – which is the class the Court is certifying – is much broader and, indeed, much larger. It should be noted, however, that "the numerosity requirement has been relaxed in cases . . . where injunctive and declaratory relief is sought by the

_____

[4] Plaintiffs cite different – but similarly large – numbers: 1,718 current female students and 130 current female varsity athletes. (D.I. 55 at 6, 8)

[5] To the extent DSU is continuing to argue that certain named plaintiffs should be dismissed for lack of standing or because their claims have been mooted by DSU's decision to continue the equestrian team for an additional year or for another reason (*see* D.I. 80 at 17-20), those arguments are now moot as a result of the filing of the amended Complaint.

class," and classes as small as the numbers DSU believes are involved here have been certified. *Jackson v. Danberg*, 240 F.R.D. 145, 147 (D. Del. 2007) (class involving 16 members); *see also Grant v. Sullivan,* 131 F.R.D. 436, 446 (M.D. Pa. 1990) ("This Court may certify a class even if it is composed of as few as 14 members . . . ."). There is also evidence that the equestrian team's coach received questionnaires, letters, and emails from 54 prospective student athletes for the 2010-11 academic year. (D.I. 86 at 9; D.I. 87 Ex. B ¶¶ 5-6 (C00019))

Again, the Court is satisfied that the proposed class – consisting of present, prospective, and future female students and athletes at DSU – fulfills the numerosity requirement of Rule 23.

## 2.   **Commonality and Typicality**

The next two prerequisites, commonality and typicality, require Plaintiffs to prove that there are questions of law or fact common to the class and that the claims of the representative parties are typical of the claims of the class. Commonality is present "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). A named plaintiff's "claim is typical if it arises from the same event, practice, or conduct that gives rise to the claim of the other class members, and is based on the same legal theory." *Wilmington Firefighters Local 1590 v. City of Wilmington*, 109 F.R.D. 89, 93 (D. Del. 1985); *see also Cureton v. National Collegiate Athletic Ass'n*, 1999 WL 447313, at *8 (E.D. Pa. July 1, 1999) (holding that typicality requirement was satisfied when defendant's conduct affected named plaintiffs and proposed class in same discriminatory fashion). "The concepts of commonality and typicality are broadly defined and tend to merge." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 303 (3d Cir. 2005) (internal quotation

7

marks omitted).

Here, the Court is satisfied that the named plaintiffs have claims against DSU that are common with and typical of the claims other members of the class have against DSU. The common questions of law and fact belonging to both the named plaintiffs and the larger class include whether DSU is in compliance with its obligations under Title IX and, if not, whether any proposed corrective actions DSU might take would bring it into compliance with the statute. As Plaintiffs observe, their claims are typical of those of the class because they arise from the same practices: DSU's alleged "failure to comply with Title IX by providing inadequate athletic opportunities and recruiting resources for its female students. . . . As a result, they seek the same relief as other female athletes who desire to participate, or have been deterred or prevented from participating in varsity sports, namely the equal opportunity to do so." (D.I. 86 at 6-7) Consequently, as Plaintiffs emphasize, "[i]n their complaint and deposition testimony, plaintiffs seek not only reinstatement of the equestrian team, but the addition of other opportunities for women to participate in intercollegiate sports." (*Id*. at 3)

On Plaintiffs' view, "DSU's decision to cut the equestrian team is just another example of [a history of] unlawful discriminatory conduct." (*Id*. at 7) It appears, as DSU suggests, that it was the recent decision to eliminate the equestrian team that motivated the named plaintiffs – all of whom are on the equestrian team – to file suit. Nonetheless, Plaintiffs' legal theories and desired relief are not limited to DSU's treatment of the equestrian team. Instead, their theories of discrimination are common to and typical of those of the class, and the broad relief they seek (compliance with Title IX) would benefit the entire class.

DSU argues that the named Plaintiffs do not have common interests with the other, non-

8

equestrian, student athletes in the proposed class because members of a single eliminated sport

do not share common interests with the sports that remain. (D.I. 80 at 10) According to DSU, it

can achieve compliance with Title IX (under Prong 1 of the three-part test established by the

Office of Civil Rights) if its proportion of female student enrollment is matched by its proportion

of its female athletes, an objective DSU claims it can accomplish even with elimination of the

women's equestrian team. (*Id.* at 11) To DSU, it follows that "the members of the equestrian

team – the only named Plaintiffs – have a very different interest than that of the other female

athletes at DSU, current and future, who are not facing elimination of their chosen sport." (*Id.* at

11-12) DSU further claims that Plaintiffs' grievances are atypical because they do not seek the

same relief as other members of the class. (*Id.* at 12)

However, as Plaintiffs point out, several courts have recognized that members of

eliminated teams may serve as representatives of a class of all current and future athletes. *See*

*Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 335-36 (3d Cir. 1993) (recognizing certification of class

consisting of all present and future women athletes at Indiana University of Pennsylvania –

"IUP" – where named plaintiffs were members of just two of IUP's teams, both of which were

being eliminated); *Cohen v. Brown Univ.*, 991 F.2d 888, 893 (1st Cir. 1993); *Biediger v.*

*Quinnipiac Univ.*, 2010 WL 2017773 (D. Conn. May 20, 2010); *Biediger v. Quinnipiac Univ.*,

616 F. Supp. 2d 277 (D. Conn. 2009); *see also* D.I. 86 at 2-3 n.2, 6). In reaching this conclusion,

these earlier cases necessarily determined that the claims of individuals on teams facing

elimination may be common with and typical of the claims of athletes on teams that are not

facing a threat of imminent elimination. Here, again, the members of the women's equestrian

team share a common interest with other DSU female students in compelling DSU's compliance

9

with its Title IX obligations; and in claiming that DSU has failed to comply with these obligations the members of the equestrian team are asserting discrimination claims that are typical of those that may be asserted by other members of the class. The commonality and typicality requisites of Rule 23 are satisfied.

### 3. Adequacy

Rule 23(a)(4) also requires that the named class representatives "fairly and adequately protect the interests of the class." "The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir. 1988). "The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (internal quotation marks omitted). "It assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Id.* (internal quotation marks omitted).

The Court finds that the named plaintiffs have obtained adequate counsel and there is no conflict between the claims of the complainants and those of the class as a whole. The Court is satisfied, based upon the record of this case, that the named plaintiffs demonstrate sufficient interest, willingness, and ability to pursue the claims that they assert on behalf of the class.

DSU contends that Plaintiffs' proposed class, if certified at all, should be limited to current and future members of DSU's equestrian team because the named plaintiffs are only

10

adequate to represent other equestrian team members. (D.I. 80 at 12) DSU further argues that "[p]rior to the announced elimination of the equestrian team, not a single plaintiff had previously complained about the availability of athletic opportunities or athletic support for female athletes at DSU." (*Id.* at 2) Essentially, DSU asserts that there is a conflict between what DSU would characterize as the named plaintiffs' primary goal – preserving the women's equestrian team "at all costs" – and the broader interests of the proposed class, which are to require DSU to comply with Title IX, even if such compliance is accomplished at the expense of the equestrian team.

The Court agrees with Plaintiffs that DSU "has failed to demonstrate the existence of any conflicts." (D.I. 86 at 2) Instead, DSU has merely pointed to speculative, potential conflicts: if DSU adheres to its plan to eliminate the women's equestrian team and if DSU otherwise satisfies its obligations under Title IX, then at that point it will become possible that the named plaintiffs will not adequately represent the interests of the class, because maybe then the named plaintiffs will abandon their stated commitment to equal athletic opportunities for all female students at DSU. In the present circumstances, the Court will not credit such speculation. *See T.B. v. Sch. Dist. of Phila.*, 1997 WL 786448, at *5 (E.D. Pa. Dec. 1, 1997) (finding "any potential conflict [to be] too remote and speculative to warrant withholding class certification"). This is particularly so because several of the named plaintiffs have testified expressly that they are motivated to obtain equal opportunities for all female students at DSU, not just to preserve the equestrian team. *See* Foltz Dep. Tr. at 57-58 (D.I. 88 at C00182) (stating she will still pursue case even if equestrian team is reinstated because there still will be inequality for women athletes); Savosh Dep. Tr. at 7 (D.I. 88 at C00204) (stating she joined lawsuit to reinstate

11

equestrian team and bring equality in number of opportunities for women to participate on athletic teams); Hotz Dep. Tr. at 28-29 (D.I. 88 at C00185) (same); Collins Dep. Tr. at 4 (D.I. 88 at C00179) (same); Huyett Dep. Tr. at 54-55 (D.I. 88 at C00191) (same).[6]

Indeed, as DSU itself points out, at least two of the named plaintiffs (Collins and Hotz) "recognize [that] Title IX does not require the support of any particular sport and, if DSU is otherwise in compliance with the law, it may eliminate the equestrian team without legal consequence." (D.I. 80 at 11 n.7 (citing Collins Dep. Tr. at 6 (D.I. 81 at B159); Hotz Dep. Tr. at 66 (D.I. 81 at B176))) Notwithstanding this recognition, these named plaintiffs (as well as the others) are pursuing and actively prosecuting this case. It may be possible that this case will conclude with DSU eliminating the equestrian team but nonetheless being found in compliance with Title IX.[7] That the named plaintiffs recognize this possibility, yet continue vigorously to prosecute the action nonetheless, supports rather than undermines Plaintiffs' contention that they satisfy the requirements for class certification.

### 4. Rule 23(b)(2)

Having concluded that Plaintiffs meet the requirements of Rule 23(a), the Court now

___

[6]If, as this litigation progresses, a conflict between the interests of the named plaintiffs and the remainder of the class becomes manifest, the Court retains the flexibility to modify the class structure as needed. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *McNamara v. Felderhof*, 410 F.3d 277, 280-81 (5th Cir. 2005) ("[A] district court is free to reconsider its class certification ruling as often as necessary before judgment."); *see also Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) ("Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops.").

[7]Of course, the Court is not making any legal or factual decision on these points at this time.

12

turns to "the additional requirement of Rule 23(b)(2) that putative class plaintiffs demonstrate that the party opposing the class acted in a manner that is generally applicable to the class, thereby making injunctive or other relief appropriate to the class as a whole." *Hassine*, 846 F.2d at 178-79. "To meet this requirement, the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of *res judicata*." *Id.* Plaintiffs are not entitled to class certification merely because their case arises under Title IX. *See Alston v. Va. High School League, Inc.*, 184 F.R.D. 574, 580 (W.D. Va. 1999). However, the Third Circuit has stated that "this requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58. "It is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment. In fact, the injunctive class provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Id.* at 58-59 (internal quotation marks omitted).

Plaintiffs allege that DSU acted on grounds generally applicable to the class by refusing to provide equal opportunity and treatment to its female student athletes as mandated by Title IX. Plaintiffs seek broad declaratory and injunctive relief. *See* Cmplt. (D.I. 95) at 13 ¶ (b) (requesting that Court "[d]eclare that defendant has discriminated against women on the basis of sex in intercollegiate athletics in violation of Title IX and its applicable regulations, policy interpretation, and clarifications"); *id.* at 14 ¶ (d) (requesting that Court "issue a final injunction

13

that restrains the defendant from continuing to discriminate against female students on the basis of sex and from eliminating the women's varsity equestrian team or any women's athletic opportunities; requires defendant to provide females with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of defendant's present, prospective, and future students; requires defendant to provide the women's equestrian team and any new varsity athletic teams with funding, staffing, recruiting opportunities and other benefits commensurate with their status as a varsity team; requires defendant to provide equivalent resources and opportunities for recruitment of female student-athletes; and prohibits defendant from retaliating in any manner against plaintiffs or class members for asserting their legal rights to equal opportunity").

DSU argues that because Rule 23(b)(2) requires the party opposing class certification to have acted on grounds generally applicable to the class, it is difficult to see how DSU, in eliminating only the women's equestrian team, has acted in a manner generally applicable to the proposed class of all current and future female DSU students and athletes. (D.I. 80 at 15) DSU contends that such a class is "hopelessly overbroad." (*Id.*) This is essentially the same argument DSU makes in connection with the Rule 23(a) requisites to class certification. DSU's position regarding Rule 23(b)(2) is rejected for the same reasons it was rejected in connection with Rule 23(a).

**B.     Appointment of Class Counsel**

In their request for appointment of class counsel, Plaintiffs incorporate by reference their prior Memorandum of Law in Support of Motion for Appointment of Flaster Greenberg, P.C.,

14

and Women's Law Project as Interim Co-Lead Counsel (the "Counsel Memorandum"). (D.I. 4)[8]

The Counsel Memorandum details the qualifications of Abbe F. Fletman of Flaster Greenberg

P.C. and Terry L. Fromson of the Women's Law Project. (*Id.*) The Court is satisfied that

Fletman and Fromson are qualified to "fairly and adequately represent the interests of the class,"

as required by Rule 23(g).[9] Accordingly, the Court will appoint Abbe F. Fletman of Flaster

Greenberg, P.C. and Terry L. Fromson of the Women's Law Project as class counsel.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.     The following class is certified pursuant to Rules 23(a) and 23(b)(2) of the Federal

Rules of Civil Procedure:

> All present, prospective, and future DSU female students, including currently
> enrolled students, students admitted for the 2010-11 academic year, and
> prospective students, who participate, seek to participate, or have been deterred or
> prevented from participating in or obtaining the benefits of, intercollegiate
> athletics sponsored by DSU.

2.     The class representatives shall be the named plaintiffs: Caroline Foltz, Shelby

Bonneville, Brittni Collins, Erin Engard, Amanda Hotz, Breann Huyett, Victoria Keen, and

_____

[8]During the preliminary injunction proceedings, when there was also pending a related
case, the Court denied without prejudice the motions of plaintiffs in both related cases for their
attorneys to be appointed interim lead counsel for the putative class. (D.I. 24) The related case,
*M.B. v. Delaware State University*, C.A. No. 10-121-JJF-LPS (D. Del.), subsequently settled.

[9]Nor has DSU argued to the contrary.

Diana Savosh.

3.     Pursuant to Federal Rules of Civil Procedure 23(g), the Court hereby designates

the following as class counsel: Abbe F. Fletman of Flaster Greenberg P.C. and Terry L. Fromson

of the Women's Law Project.

Dated: July 12, 2010

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

16