IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, BRITTNI COLLINS, ERIN ENGARD, AMANDA HOTZ, BREANN HUYETT, VICTORIA KEEN and DIANA SAVOSH, on behalf of themselves and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DELAWARE STATE UNIVERSITY,<br><br>Defendant. | Civil Action No. 10-149 (LPS)<br><br>CLASS ACTION |

PROPOSED CONSENT DECREE

AND NOW, this 20th day of December, 2010, upon agreement of the parties, it is hereby ORDERED that:

1. No later than June 30, 2013, DSU will be compliant with Prong 1 of Title IX's participation test, meaning that it will achieve proportionality within two and one-half percentage (2.5%) points between the male/female ratio of its undergraduate student enrollment and the male/female ratio of its varsity student-athletes.

2. DSU will maintain the women's equestrian team as a varsity sport until the earlier of:

    (a) the end of the academic year (defined as July 1 through June 30) in which DSU has achieved Prong 1 compliance with Title IX's participation test within two and

one-half percentage points without including the number of equestrian team members in calculating compliance with Prong 1; or

  (b) the academic year in which the NCAA determines that it will no longer recognize equestrian as an emerging sport or varsity sport and that equestrian team members cannot be counted in the number of athletic participants for Title IX purposes.[1]

  3. DSU will notify Plaintiffs' counsel and the members of the equestrian team and coaches of DSU's intention to achieve Prong 1 compliance without the equestrian team members ("Notice") no later than November 30 of the academic year in which it anticipates achieving Prong 1 compliance. DSU shall not notify any other person or entity of the anticipated achievement of Prong 1 compliance on or before May 31 of that academic year except DSU management employees or representatives who need to know to perform their job responsibilities. Any DSU employee or representative informed of DSU's intention to eliminate the equestrian team on or before May 31 will be instructed that the decision is tentative and must be kept confidential.

  4. Plaintiffs agree that the coach(es) of the equestrian team will disseminate a notice prepared by DSU advising every member and potential member of the equestrian team of the provisions of Paragraphs 1 through 3 above.

  5. On November 30 and April 15 of the academic year in which DSU provides Notice, DSU will provide to Magistrate Judge Mary Pat Thynge of the U.S. District Court for the District of Delaware, with a copy to Plaintiffs' counsel, all documentation identified in Paragraph 8 below that it has not already provided, including documents specified in

---

[1] DSU of course may achieve Title IX compliance as defined in Section 1 above by continuing the women's varsity equestrian team and otherwise increasing its women's participation numbers to reach proportionality.

2

subparagraphs 8(a)(i) through (a)(vii) for all teams that have not yet completed their regular season.

  (a) If Plaintiffs dispute DSU's assertion that it will achieve Prong 1 compliance without the equestrian team members in any academic year DSU provides Notice, the Plaintiffs may seek resolution of the dispute through the process set forth in Paragraph 12 below and must notify Magistrate Judge Thynge of the dispute by May 31 of the same academic year. Pending resolution of the dispute, DSU must maintain all women's varsity athletic teams existing as of the date DSU provides Notice. The Parties agree to cooperate with Magistrate Judge Thynge in order that any resolution of the dispute can be finalized prior to August 1 of that same year.

6. In the event that DSU eliminates the equestrian-team, DSU agrees to provide athletic scholarships after the elimination of the equestrian team to those students who are members of the team as of the date of this Consent Decree for the duration of each eligible equestrian team member's four-year undergraduate education.

  (a) The annual percentage level of any such athletic scholarship for each such student will not be lessened, but will reflect the level offered to such student-athletes receiving athletic scholarships during the academic year in which DSU eliminates the equestrian team. For example, if the equestrian team is eliminated at the end of the 2011-12 academic year, and a sophomore (who was a member of the team as of the date of this Consent Decree) in the 2011-12 academic year is receiving a 50 % scholarship plus a book allowance in the 2011-12 academic year, then that sophomore will receive a 50 % scholarship plus a book allowance in both her junior and senior years, provided that she has complied with all other requirements of the scholarship. The actual amount of her

scholarship and book allowance will be the same as any other student-athlete receiving a 50 % scholarship plus a book allowance in the same year.

7. Starting in the 2010-11 academic year, DSU shall increase the amount of funds allocated to women's varsity athletic teams until the allocations of recruiting funds allocated to men's and women's varsity athletic teams are equal.

    (a) DSU will allocate funs for recruitment in the following manner:

        (i) On or before January 1, 2011, DSU will increase the total amount of recruitment funds allocated to women's varsity teams for the 2010-11 academic year to $80,835;

        (ii) In the 2011-12 athletic budget, DSU will increase the total amount of recruitment funds allocated to women's varsity teams to $90,835;

        (iii) In the 2012-13 athletic budget, DSU will increase the total amount of recruitment funds allocated to women's varsity teams to $100,835;

        (iv) In the 2013-14 athletic budget, DSU will increase the total amount of recruitment funds allocated to women's varsity teams to equal the total amount of recruitment dollars expended by men's varsity teams in the 2012-13 academic year; and

        (v) Beginning in the 2014-2015 academic year, DSU will allocate an equal amount of funds for recruitment to the men's and women's varsity teams.

    (b) During the period from 2010 through 2014, DSU will not allocate more than 74 percent annually of the total amount of funds budgeted for recruitment to men's varsity teams.

4

Case 1:10-cv-00149-LPS   Document 119-5   Filed 10/21/10   Page 6 of 14 PageID #: 1572

(c)     DSU will not achieve the increase in women's varsity athletic teams' recruitment budgets outlined in subparagraphs (a)(i) through (a)(v) above by shifting funds from any other line item in the overall operating budgets of women's varsity athletic teams.

(d)     No later than September 15 of each academic year, DSU will provide to Magistrate Judge Thynge, with a copy to Plaintiffs' counsel, the following documentation for recruiting budgets in each academic year commencing with the 2010-11 academic year and ending with the 2014-15 academic year. Documentation for the current academic year will be provided no later than January 15, 2011.

   (i)     the full-time undergraduate student enrollment numbers by gender;

   (ii)    amounts allocated to each of the men's and women's varsity athletic teams for recruiting for the current academic year;

   (iii)   amounts expended by each of the men's and women's varsity athletic teams for recruiting in the previous academic year; and

   (iv)    total line item budgets for each of the men's and women's varsity athletic teams for the current academic year, which, at minimum, includes line items for each category in the operating budget, such as travel and recruitment, as well as line items for salaries and scholarships.

8.     DSU will provide documentation to Magistrate Judge Thynge with a copy to Plaintiffs' counsel regarding DSU's men's and women's varsity athletic teams to aid Plaintiffs' in monitoring DSU's compliance with the terms of this Consent Order.

(a)     DSU will provide the following documentation for each of DSU's men's and women's varsity athletic teams within 10 days of the conclusion of the team's regular

5

season, commencing with the 2010-11 academic year and continuing for one academic year following the first academic year in which DSU achieves compliance with Prong 1 of Title IX's participation requirement as set forth in Paragraph 1 above:

 (i) NCAA eligibility and clearance forms for all athletes;

 (ii) Squad lists for each of the men's and women's varsity athletic teams;

 (iii) All squad list change forms adding/deleting student-athletes to a squad;

 (iv) All individual student-athlete competition, hardship and redshirt ("CHR") reports;

 (v) All individual student-athlete season competition reports;

 (vi) A record of student-athlete attendance at all varsity team practices;

 (vii) A current spreadsheet of all DSU student-athletes on roster; and

 (viii) The full-time undergraduate student enrollment numbers by gender.

(b) DSU also will provide Plaintiffs' counsel with a key to all codes used in any of the documentation forwarded to Plaintiffs' counsel pursuant to this Memorandum of Understanding and the consent decree entered by the Court.

(c) To the extent that any of the information sought in subparagraphs (a)(i) through (a)(v) is regularly maintained by DSU in a combined report, rather than as separate reports, Plaintiffs agree that the combined report(s) are sufficient for purposes of this paragraph and that DSU will not be required to create a separate report that it does not currently maintain.

6

(d)   If DSU creates any new women's varsity sports team(s), it will advise Plaintiffs' counsel and include the new team in all of its reporting obligations under this Consent Decree.

9.   DSU shall require all members of the Athletic Department, all varsity coaches and all varsity athletes to attend one Title IX training session to be conducted by a recognized expert on Title IX from outside the DSU community; training sessions shall be conducted once during the Spring 2011 semester and once during the Fall 2011 semester.

(a)   The identity of the trainer selected by DSU will be disclosed to Plaintiffs' counsel no later than December 31, 2010; Plaintiffs' counsel will notify counsel for DSU within 10 days if they have any objections to the expert chosen by DSU. In the event that objections are raised, counsel for the Parties shall cooperate in selecting a mutually agreeable party to conduct Title IX training. The content and length of the training shall be determined by the party conducting the training.

10.   The Parties and their counsel shall not disclose any documents or information provided by each Party pursuant to this Consent Decree that either Party designates as confidential information (defined below), except as provided for in subparagraph (c) below.

(a)   "Confidential Information" shall include any type of information either Party believes in good faith to constitute, contain, reveal or reflect confidential, personal, sensitive personnel, financial, business and/or proprietary information based upon a showing of good cause as articulated in *Pansy v. Stroudsburg*, 223 F.3d 722 (3d Cir. 1994).

(b)   All or any part of a document provided by either Party may be designated as "Confidential Information" by either Party by marking the word "Confidential" on the

face of the original document or a photocopy thereof, and each page so designated, or in the case of electronic data (*e.g.* floppy disks, DVD, or CD-Rom), by either Party placing the "Confidential" legend on the surface of the floppy disk, DVD, or CD-Rom.

(c) Documents or information designated as "Confidential Information" and/or any information derived therefrom may be disclosed or made available by counsel to either Party on a need-to-know basis, as follows:

(i) attorneys of record in this litigation, members of their firms, associate attorneys, contract attorneys, paralegals, secretarial staff, clerical and other regular or temporary employees, and service vendors of such counsel (including outside copying services and outside litigation support services such as translators and interpreters);

(ii) any non-party support services including, but not limited to, outside copying services, and document imaging and database services, trial consulting services, outside court reporting services and court reporters as may be reasonably necessary in connection with monitoring compliance and enforcing this Memorandum of Understanding and the consent decree entered by the Court;

(iii) experts or consultants, together with their clerical personnel, who are retained by either Party's counsel in connection with monitoring compliance and enforcing this Memorandum of Understanding and the consent decree entered by the Court, provided the person to whom such information is to be disclosed shall execute and deliver to the attorney of record making the disclosure a written Certificate of Confidentiality, in the form attached hereto as Exhibit A, before any documents or information is disclosed;

(iv) the Court, its clerks and secretaries, and any court reporter retained to record proceedings before the Court; and

(v) any other person upon whom the Parties agree in writing or upon order of the Court.

(d) "Confidential Information" may be disclosed to the Court in connection with any filing or proceeding in this Litigation, but the party or person disclosing it shall cause the "Confidential Information" to be filed under seal in accordance with subparagraph (e).

(e) Court records containing "Confidential Information" shall be filed by the Parties in accordance with Fed. R. Civ. P. 26, the Local Rules and CM/ECF Administrative Procedures. Consistent with CM/ECF Administrative Procedure (G), documents to be placed under seal must be filed in hard copy in the traditional manner, rather than electronically. Redacted versions of the sealed documents shall be filed electronically within five (5) business days of the filing of the sealed document. Unless otherwise ordered, courtesy copies of redacted versions of sealed documents shall not be provided. Such paper containing Confidential Information shall be enclosed and filed in a sealed envelope or container identifying the enclosed document and bearing the caption of this case and a notice substantially as follows:

> CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER
> This envelope or container holds information of (name of party) filed under seal pursuant to a Stipulated Confidentiality Order and is not to be opened except by direction of the Court or by written consent of (name of party).

(f) Nothing herein shall prevent either Party from producing or disclosing in any other matter "Confidential Information" in response to a lawful subpoena or other compulsory process; provided that any recipient of a subpoena or other compulsory

process shall, as soon as reasonably practicable, and in no case less than ten (10) business days before production is due, give notice thereof to the other Party's counsel by telephone and facsimile or electronic transmission, and shall furnish the other Party's counsel with a copy of the subpoena or other compulsory process so as to afford the producing party an opportunity to seek relief therefrom.

11. DSU agrees that it will not retaliate against any person for lawfully opposing practices believed to violate Title IX, for lawfully providing information, assistance, or encouragement to Plaintiffs or their counsel in connection with this Litigation or for lawfully assisting in efforts to enforce, determine or ensure compliance with this agreement.

12. If Plaintiffs have questions and/or concerns regarding DSU's compliance with this agreement or with documentation provided by DSU pursuant to this Consent Decree, their counsel shall contact DSU's counsel and make a good faith effort to resolve the dispute. If the Parties are unable to resolve any dispute regarding DSU's compliance with this agreement or reporting obligations, they will present that dispute to Magistrate Judge Thynge for resolution through mediation. If the Parties remain unable to resolve the dispute, either party may pursue appropriate relief from the U.S. District Court.

13. With the exception of the terms set forth in Paragraph 10 above, the terms of this Consent Decree shall remain in force until either June 30, 2015, or June 30 of the academic year following the academic year in which DSU achieves Prong 1 compliance as set forth in Section 1 above, whichever occurs later.

    (a) The claims of the Plaintiffs, individually and as representatives of the Class, are hereby dismissed and DSU is released, acquitted and forever discharged from any and all claims, actions, demands, judgments, damages, liabilities or obligations,

arising from and/or in any way related to DSU's compliance with Title IX from the beginning of the world until and including the date of this Order. Similarly, Plaintiffs, individually and as representatives of the Class, are hereby released, acquitted and forever discharged from any and all claims arising from and/or in any way related to DSU's compliance with Title IX from the beginning of the world until and including the date of this Order. This paragraph shall not in any way preclude the Parties from enforcing provisions of this Consent Decree.

14.  DSU agrees to pay Plaintiffs' reasonable attorneys' fees and costs, incurred in connection with this Litigation. DSU will pay said reasonable attorneys' fees and costs within 30 days of: (a) in the event the Parties agree on the amount of reasonable attorneys' fees and costs, the date the Court finally approves the settlement and enters a consent decree that includes the agreed-upon amount, or (b) the date the Court rules on Plaintiffs' petition for attorneys' fees and costs. Plaintiffs' counsel shall provide counsel for DSU records reflecting their attorneys' fees and costs in connection with this Litigation. These records shall be marked confidential pursuant to Paragraph 10 above. The Parties agree that provision of these records shall not constitute a waiver of the attorney-client privilege.

_____
UNITED STATES JUDGE

# EXHIBIT A

| | | |
|---|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, BRITTNI COLLINS, ERIN ENGARD, AMANDA HOTZ, BREANN HUYETT, VICTORIA KEEN, and DIANA SAVOSH, on behalf of themselves and all similarly situated individuals, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 10-149 (JJF/LPS) CLASS ACTION |
| v. | ) ) ) | |
| DELAWARE STATE UNIVERSITY, | ) ) | |
| Defendant. | ) | |

## COMMITMENT OF QUALIFIED PERSON PURSUANT TO CONFIDENTIALITY ORDER

I hereby affirm that: (1) I have received and read a copy of the confidentiality provision of the Consent Decree issued by the Court; (2) I understand the terms thereof and agree to be bound thereby; and (3) I am aware that a violation of such provision may result in a finding of contempt of Court.

In addition, I agree that if I am subpoenaed or otherwise requested in any litigation or dispute to testify regarding Confidential Information, or to otherwise disclose such Confidential Information, as that term is used in the captioned matter, I will be bound by the terms of the above-referenced Stipulated Confidentiality Order to the extent allowed by the law, and I shall give immediate notice of such subpoena or request to each of the following persons:

Kathleen Furey McDonough (I.D. 2395)

Sarah E. DiLuzio (I.D. 4085)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000 – Telephone
*Attorneys for Defendant Delaware State University*

Joanne Pileggi Pinckney (Id. No. 3344)
PINCKNEY, HARRIS & WEIDINGER, LLC
1220 North Market Street, Suite 950
Wilmington, DE 19801
Tel: (302) 504-1498
Fax: (302) 442-7046


Date:_____      _____
                                       Signature