IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, BRITTNI COLLINS, ERIN ENGARD, AMANDA HOTZ, BREANN HUYETT, VICTORIA KEEN, DIANA SAVOSH, on behalf of themselves and all similarly situated individuals, | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. 10-149-LPS |
| DELAWARE STATE UNIVERSITY, | : : | |
| Defendant. | : | |

## **MEMORANDUM ORDER**

Pending before the Court is the Application for Attorneys Fees and Costs filed by Plaintiffs. (D.I. 137) For the reasons discussed below, Plaintiffs' request will be granted.

## **BACKGROUND**

On February 23, 2010, student-athletes Caroline Foltz, Shelby Bonneville, Brittni Collins, Erin Engard, Amanda Hotz, Breann Huyett, Victoria Keen, and Diana Savosh (collectively, "Plaintiffs"), brought this suit, styled as a proposed class action, on behalf of themselves and a class of current, prospective, and future female students at Defendant Delaware State University ("DSU"). (D.I. 1) Plaintiffs alleged that actions by DSU caused harm to Plaintiffs and to the proposed class by intentionally discriminating based on gender in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX"). (D.I. 1; D.I. 95) The claims arose out of DSU's decision to eliminate the women's equestrian team at the conclusion of the 2009-10 academic year and the school's alleged failure to provide female athletes at DSU

equal opportunities to participate in varsity collegiate athletics.

On July 12, 2010, the Court granted Plaintiffs' Motion to Certify Class. (D.I. 103) On December 20, 2010, upon agreement of the parties, the Court approved a proposed Consent Decree. (D.I. 130) The Consent Decree required DSU to achieve proportionality (within two and one-half percentage points) between the male/female ratio of its undergraduate student enrollment and the male/female ratio of its varsity student athletes. (*Id.* at 1)

The Consent Decree further requires that DSU provide documentation relating to both athletic participation and recruiting funding at specified intervals in order to enable Plaintiffs to monitor DSU's compliance with its obligations. The required documentation consists of: (1) NCAA eligibility and clearance forms for all athletes; (2) squad lists for each of the men's and women's varsity athletic teams; (3) all squad list change forms adding/deleting student athletes to a squad; (4) all individual student-athlete competition, hardship, and red shirt ("CHR") reports; (5) all individual student-athlete season competition reports; (6) a record of student-athlete attendance at all varsity team practices; (7) a current spreadsheet of all DSU student-athletes on roster; and (8) the full-time undergraduate student enrollment numbers by gender. (*Id.* at 7) DSU must also provide documentation of recruiting budgets, including: (1) the full-time undergraduate student enrollment numbers by gender; (2) amounts allocated to each of the men's and women's varsity athletic teams for recruiting for the current academic year; (3) amounts expended by each of the men's and women's varsity athletic teams for recruiting in the previous academic year; and (4) total line item budgets for each of the men's and women's varsity athletic teams for the current academic year. (*Id.* at 6) DSU's reporting obligations commenced at the start of the 2010-11 academic year and continue until one academic year

2

following the first academic year in which DSU achieves compliance with Prong 1 of Title IX's participation requirement. (*Id.*)

On October 11, 2010, the Parties entered into a Memorandum of Understanding ("MOU"), resolving all claims between the Parties, except for the amount of reasonable attorneys' fees and costs to be awarded to Plaintiffs' counsel. (D.I. 123 at 2) The MOU provided a procedure to negotiate the amount of fees and costs with the assistance of Chief Magistrate Judge Mary Pat Thynge. (*Id.*)

On December 20, 2010, the Court granted Plaintiffs' uncontested Motion for Attorney Fees. (D.I. 130) The Court subsequently awarded: $267,373.04 in fees and $21,575.90 in costs to Flaster Greenberg, PC.; $192,919.97 in fees and $440.26 in costs to Women's Law Project; and $15,149.20 in fees and $225.74 in costs to Pinckney, Harris & Weidinger, LLC. (D.I. 129 at 4)

**LEGAL STANDARDS**

Pursuant to 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement[.]" Fed. R. Civ. P. 23(h).

In calculating reasonable attorney's fees, the Court employs the "lodestar" approach. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). "The Third Circuit has defined the lodestar method as the initial estimate of a reasonable attorney's fee . . . properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir.

3

1988) (internal quotation marks omitted); *see also Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (calculating reasonable hours requires that court "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary") (internal quotation marks omitted). Hours are not reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The prevailing community market rates assist the Court in determining a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing party bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *See Hensley*, 461 U.S. at 434; *Blum*, 465 U.S. at 895 n.11. The Court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *See Hensley*, 461 U.S. at 434.

Calculation of the lodestar does not end the inquiry, as the Court may adjust the lodestar upward or downward. Fees may be adjusted "downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37). In adjusting the lodestar, the Court may consider twelve factors (the "Johnson factors").[1] *See*

---

[1] The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

4

*Hensley*, 461 U.S. at 434. A party seeking adjustment of the lodestar bears the burden of proving the necessity of the adjustment. *See Blum*, 465 U.S. at 898.

**DISCUSSION**

After receiving fees and costs in December 2010, Plaintiffs now request reasonable attorney's fees for their efforts related to enforcement of the Consent Decree. (D.I. 137 at 1) Specifically, Plaintiffs ask the Court to award fees and costs in the amount of $45,003.55 to the Women's Law Project; $31,735.09 to Flaster/Greenberg; and $555.00 to Pinckney, Harris & Weidinger, LLC. (D.I. 137 at 25-32) Hence, they seek a total recovery of $77,293.64. (*See id.*)

DSU opposes. First, it argues that the specific monitoring activities undertaken were not authorized by or within the scope of the Consent Decree. (D.I. 138 at 2) In this respect, DSU contends that Plaintiffs' monitoring efforts were unreasonable. Alternatively, DSU argues that the fees are unreasonable in that the lodestar amount should be reduced. (*See id.*)

**Enforcement of The Consent Decree**

There is no dispute that the Plaintiffs are the prevailing party in this action. (D.I. 123 at 3) Additionally, DSU concedes that Plaintiffs may be awarded fees for post-judgment monitoring services. (D.I. 138 at 5)

The Court has discretion to award reasonable attorney's fees arising from work done to enforce a judicial decree under fee shifting statutes. *See Smith v. Law Offices of Mitchell N. Kay*, 762 F. Supp. 82, 85 (D. Del. 1991). Accordingly, "the fact that the work done by counsel [described above] did not occur in the context of traditional judicial litigation does not preclude an award of reasonable attorney's fees under [the fee shifting provision] for the work done during these portions of the present action." *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S.

546, 560 (1986) (alterations in original).

The detailed reporting obligations contained in the Consent Decree were necessary to protect Plaintiffs' rights. Hence, thorough monitoring by Plaintiffs' counsel to ensure DSU's compliance with the reporting obligations imposed by the Consent Decree was necessary to effectuate the purpose of the Consent Decree. It was not unreasonable for Plaintiffs to view these monitoring tasks as something other than menial or ministerial responsibilities and, therefore, to rely on counsel – and counsel's expertise in this area and experience with this litigation – to ensure DSU's compliance. Plaintiffs' requested fees are not unreasonable.

**Plaintiffs' Requested Fees Are Reasonable**

Plaintiffs' monitoring includes the following:

(1) reviewing and analyzing extensive documentation relating to the members of the 16 men's and women's teams in existence since the Consent Decree was approved to determine whether each of the more than 300 athletes identified annually by DSU meets the definition of "participant" under Title IX. for two years;

(2) examining NCAA eligibility status for each athlete of each team, including eligibility status; squad list inclusion, addition, and deletion; injury and scholarship status; roster inclusion; competition participation; and regular attendance at practices and other team activities;

(3) reviewing and analyzing documentation to determine whether an athlete is an athletic participant;

(4) cross-checking to determine how many Title IX participants were on each varsity athletic team; and

(5) determining who qualifies as a Title IX participant based on a calculation of practice

attendance. (D.I. 130 at 6-7)

Having reviewed Plaintiffs' counsel's Declarations, as well as the detailed billing records provided, the Court finds that both the amount of hours expended by counsel on the foregoing monitoring activities and the hourly rates charged by counsel (and their assistants) are reasonable. Nor is the Court persuaded that there is any reason to reduce the lodestar amount. DSU's arguments challenging this conclusion are unpersuasive.

A reasonable hourly rate is determined by prevailing market rates in the community. *See Blum*, 465 U.S. at 896 n.11. A prevailing market rate is the rate "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (internal quotation marks omitted). Having reviewed the Declarations submitted by Plaintiffs' counsel, the Court finds that the hourly rates charged – ranging from $505 for Abbe Fletman to $420 for Terry L. Fromson to $80 for a paralegal – are reasonable and consistent "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11; *see also* D.I. 137 Ex. 5 (Declaration of experienced Delaware attorney opining as to reasonableness of Plaintiffs' counsel's rates).

DSU contends that Plaintiffs' time entries are vague, unnecessary, and excessive. (D.I. 138 at 12-20) After examining counsel's Declarations and other materials in the record, the Court concludes that the specificity detailed in these submissions is adequate. The documents presented to the Court in accordance with briefing outline the name of each attorney who participated in the review process, the date work was completed, the amount of time needed to complete the work, the hourly rate at which the work was billed, and the amount actually billed. In addition,

counsel's Declarations provide detailed descriptions of the work completed. (*See* D.I. 137) This documentation is adequate. *See Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983).

DSU further argues that some of the information Plaintiffs' counsel "reviewed was not and will never be necessary to evaluate proportionality." (D.I. 138 at 20) DSU further agues that certain aspects of time spent in monitoring were excessive. (*Id.* at 18-20) In particular, DSU claims that Plaintiffs' counsel should have not needed the amount of time they took to conduct research, mediate, and brief this motion. (*Id.*) The Court finds no support for these contentions in the record and rejects them. To the contrary, given the many years this case has been pending, dividing the work on Plaintiffs' side among several attorneys, and pooling knowledge among, was reasonable. *See generally Choike v. Slippery Rock Univ.*, 2010 WL 4614610, at *5 (W.D. Pa. Nov. 5, 2010).

Finally, DSU contends that Plaintiffs unreasonably staffed overqualified individuals to participate in the monitoring process. (D.I. 138 at 12-20) For the reasons already explained, the Court disagrees. *See also Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 2008 WL 906031, at *13 (W.D. Mich. Mar. 31, 2008) (internal quotation marks omitted).

## CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion for Attorneys' Fees and Costs (D.I. 137) is GRANTED.

2. The Women's Law Project is awarded its reasonable attorney's fees incurred in this matter in the amount of $45,003.55.

3. Flaster Greenberg PC is awarded its reasonable attorney's fees incurred in this matter in the amount of $31,735.09.

4. Pinckney, Harris & Weidinger, LLC is awarded its reasonable attorney's fees incurred in this matter in the amount of $555.00.

5. Flaster Greenberg PC is awarded its reasonable costs of $147.84.[2]

September 30, 2014
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

---

[2] It appears that these costs consist of travel-related expenses for a court hearing and courier services. (D.I. 137-4 at 9-10) Even assuming DSU opposes payment of these costs (it is unclear whether it does), the Court finds that these costs are reasonable and will award them.

9