IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CAROLINE FOLTZ, SHELBY BONNEVILLE, BRITTNI COLLINS, ERIN ENGARD, AMANDA HOTZ, BREANN HUYETT, VICTORIA KEEN and DIANA SAVOSH, on behalf of themselves and all similarly situated individuals, | Civil Action No. 10-149 ~~(VAC)~~ *GBW - MPT* |
| Plaintiffs, | CLASS ACTION |
| v. |  |
| DELAWARE STATE UNIVERSITY, |  |
| Defendant. |  |

## REVISED CONSENT DECREE

AND NOW, this __14th__ day of ___September___, 2022, upon agreement of the Class Plaintiffs and Defendant Delaware State University (collectively the "Parties"), it is hereby ORDERED that:

**A.   Key Definitions and Understandings**

For purposes of this Revised Consent Decree, the following terms and understandings will be defined as follows:

1.      At the end of 2020-2021 academic year, the base proportion of male and female athletic participants in DSU varsity athletic teams was 55 percent female and 45 percent male.

2.      A "Participant" is an athlete who is counted for Title IX purposes if that athlete: (a) receives institutionally-sponsored support normally provided to athletes competing at the institution on a regular basis during a sport's season, such as coaching, equipment, and medical and training room services; and (b) is participating in organized practice sessions and other team activities on a regular basis during the sport's season; and (c) is listed on eligibility or squad lists maintained for each sport; or (d) cannot meet a, b, or c due to injury but continues to receive athletic financial aid. 1979 Policy Interpretation, 44 Fed. Reg. 71413, 71415 (VII, A, 4 (Definitions) (Dec. 11, 1979) ("1979 Policy Interpretation"). To participate "on a regular basis" means participation in at least 51 percent of the team practices and other activities. *See Cohen v. Brown University*, 879 F. Supp. 185, 192 (D.R.I. 1995), *aff'd in part and rev'd in part*, 101F. 3d 155, 164, 174 (1st Cir. 1996).

3.      Countable sports are determined pursuant to the criteria set forth in the Dear Colleague Letter: Athletic Activities Counted for Title IX Compliance U.S. DEP'T. EDUC., OCR (Sept. 17, 2008), available at

https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20080917.html

4.     Treatment, benefits, and services for varsity teams include, without limitation, opportunities to compete, equipment and supplies, scheduling of games and practice times, travel and daily per diem allowances, access to tutoring, coaching, locker rooms, practice and competitive facilities, medical and training facilities and services, publicity, recruitment of student athletes and support services, as described in 1979 Policy Interpretation, 44 Fed. Reg. 71413, 71415-17 (Dec. 11, 1979) ("Policy Interpretation").

**B.     Terms**

5.     Except as provided in paragraph nine (9), DSU shall achieve a ratio of 60/40 female-to-male student varsity athletic Participants within five (5) academic years of approval of this Revised Consent Decree.  This ratio shall be calculated based on a count of athletic Participants as defined in paragraph 2, above.  DSU will act in good faith to reach this 60/40 female-to-male ratio at all times during the duration of the Revised Consent Decree.

6.     DSU will increase the percentage of female athletes to at least 60 percent of the total varsity athletes by adding two new women's varsity teams that satisfy the criteria for countable sports in paragraph 3 above within five (5) years of the entry of this Revised Consent Decree such that the second-added team will be in a position to start its first active competitive season at the latest by the

3

commencement of the athletic pre-season for the 2026-2027 academic year[1] and the first-added team will have become active at an earlier time.

7.    DSU shall consult with, and, absent good cause, comply with the recommendations of the Gender Equity in Athletics Committee ("Committee"), established pursuant to paragraph 15 below, regarding the selection of the new women's teams to be added.

8.    DSU shall notify Plaintiffs' counsel within five (5) business days of DSU's approval of the addition of a new women's athletic varsity team, along with the academic year in which it will be added and the projected number of athletes expected to join the team.  In at least thirty (30) days before the new team commences its first competitive season, DSU shall provide to Plaintiffs' counsel the following information relating to the team and its first season:

(a)    the team's recruiting budget and recruiting efforts;

(b)    the identity and resume and/or biographical information of the team's coach(es);

(c)    the team squad list and eligibility list;

---

[1] This means that no later than the start of the 2026-2027 academic year, the coaching staff will have been hired, treatment, benefits and services (as defined in paragraph 4 above) will have been dedicated to the new team, recruiting will have commenced, scholarships will have been granted, and the new team will be in a position to compete during the 2026-2027 academic year.

4

(d)    a summary and description of the team's practice and competition facilities and locker rooms; and,

(e)    a competition schedule of confirmed competitions and a list of additionally expected competitions.

9.    If DSU does not achieve the 60/40 female-to-male ratio by the end of the fifth academic year as specified in paragraph 5 above, this Revised Consent Decree will be extended for two more years and DSU will add new women's varsity team(s) that satisfy the criteria for countable sports in paragraph 3 above. The number of new women's varsity teams to be added will be determined based on the number of additional female athletes needed to achieve 60 percent female athletic Participants and the number of athletes required to field a team. For example, if the number of athletes that need to be added to achieve 60 percent female athletes is sufficient to field one varsity team which DSU is not already sponsoring, DSU will add one more women's varsity team.

10.    DSU will provide existing and new women's varsity teams with equivalent treatment, benefits, and services as defined in paragraph 4 above and assessed pursuant to Policy Interpretation, Federal Register / Vol. 44, No. 239 / Tuesday, December 11, 1979 / Rules and Regulations, at "Section B. Equivalence in Other Athletic Benefits and Opportunities." (See Policy Interpretation at

https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html and Fed Reg. at 71415-71417).

11. DSU will maintain its current and new women's varsity teams so long as the Revised Consent Decree is in effect.

12. DSU will provide documentation, as identified in this paragraph, to Plaintiffs' counsel regarding DSU's men's and women's varsity athletic teams to aid Plaintiffs' counsel in monitoring DSU's compliance with the terms of this Revised Consent Decree.

(a) DSU will provide the following documentation for each of DSU's men's and women's varsity athletic teams for the prior academic year no later than July 15 of each year for the duration of the Revised Consent Decree:

(i) Eligibility compliance forms that specify NCAA eligibility for each of the athletes on each of the men's and women's varsity athletic teams;

(ii) NCAA squad lists that list each of the athletes on each of the men's and women's varsity athletic teams;

(iii) Documentation of all squad list changes for each team, including but not limited to additions and deletions of athletes, and the

6

reasons for and dates of the changes (e.g. due to quitting, ineligibility, injury or redshirt);

(iv)   All individual student-athlete season competition reports identifying athletes who competed in each athletic event; and,

(v)   A record of daily attendance by individual athletes at each varsity team practice for each team.

(b)   No later than July 15 for the duration of the Revised Consent Decree, DSU will provide Plaintiffs' counsel with the end of the academic year ratio of female-to-male athletic Participants, calculated based on a count of athletic Participants as defined in paragraph 2, along with the individual team sizes supporting that ratio, and, to the extent there are any disparities between those team sizes and the eligible student-athletes listed on the team squad list and those counted for the ratio, an explanation of why those athletes were included or excluded from the team count used to calculate the ratio. DSU will also provide Plaintiffs' counsel with DSU's projections of varsity team sizes for the next academic year.

(c)   DSU will provide Plaintiffs' counsel with a key to all codes used in any of the documentation forwarded to Plaintiffs' counsel pursuant to this Revised Consent Decree.

(d)     To the extent that any of the information sought in subparagraphs (a)(i) through (a)(v) is regularly maintained by DSU in a combined report, rather than as separate reports, Plaintiffs' counsel agree that the combined report(s) are sufficient for purposes of this paragraph and that DSU will not be required to create a separate report that it does not currently maintain.

(e)     When DSU adds any new women's varsity sports team(s), it will notify Plaintiffs' counsel as described in paragraph 8 above and include the new team in all of its future reporting obligations under this Revised Consent Decree.

13.     During the spring semester of 2022, DSU will conduct an investigation of sports in which women high school students participate in the states from which DSU draws its applicants to assist it in selecting the women's varsity teams to be added pursuant to paragraph 6 and, if necessary, paragraph 9. DSU shall share the written results of its investigation with Plaintiffs' counsel and the Committee, by June 1, 2022. DSU will conduct another investigation of sports in which women high school students participate in the states from which DSU draws its applicants in the spring semester of the third year of the term of the Revised Consent Decree and share the results with Plaintiffs' counsel and the

Gender Equity in Athletics Committee in the same manner as specified for the 2022 investigation.

14.     During the spring semester of 2022, DSU shall engage a third party professional knowledgeable about the guidance of the U.S. Department of Education Office of Civil Rights[2] regarding standards to develop and distribute a survey to current and admitted female students inquiring as to their interest and ability in athletics to be distributed during the fall semester 2022.  DSU will conduct the survey again in the spring semester of the third year of the term of this Revised Consent Decree.  The following terms in (a) through (d) below apply to the 2022  survey; subsections (c) and (d) of this paragraph shall apply to the survey to be conducted in the third year of the Revised Consent Decree.  The purpose of the surveys will be to assist DSU in the selection of women's varsity teams to be added pursuant to paragraph 6, and if necessary, paragraph 9.

(a)     The identity of the third-party professional selected by DSU shall be disclosed by DSU to Plaintiffs' counsel within ten (10) days of the selection.  Plaintiffs' counsel will notify counsel for DSU within ten (10) days if they have any objections to the professional chosen by DSU.  In the event Plaintiffs' counsel raises any objections to the selected third-party

---

[2] The guidance will include the *Dear Colleague Letter: Intercollegiate Athletics Policy: Clarification: The Three-Part Test - Part Three*, U.S. DEP'T. EDUC., OCR (Apr. 20, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20100420.pdf.

professional, counsel for the parties shall cooperate in selecting a mutually agreeable third-party professional to develop the survey.

(b) The hired professional shall share with the Committee a draft of the survey for the Committee's feedback before the survey is finalized and distributed and shall consider reasonable modifications to the survey consistent with Committee feedback.

(c) DSU shall share the results of the survey with the Committee in writing within two (2) weeks of receiving the third-party professional's final product, request the Committee's feedback about DSU's response to the survey results, and consider the Committee's feedback in its response to the survey.

(d) DSU shall share the results of the survey with Plaintiffs' counsel in writing within two (2) weeks of receiving the third-party professional's final product.

15. DSU shall establish and staff a Gender Equity in Athletics Committee by May 14, 2022, to include the Director of Athletics, or their designee, at least two athletes and two coaches, the Title IX Coordinator, and the Senior Women's Administrator. The Committee shall, upon its creation, be provided education on Title IX as it applies to athletics, including the full range of guidance documents and resources of the Office for Civil Rights of the U.S. Department of Education

on equity in athletics. DSU shall maintain the Committee for, at a minimum, the greater of five (5) years or the date of termination of the Revised Consent Decree.

(a) The Committee shall meet regularly to consider and: (i) make recommendations to achieve and maintain DSU's compliance with Title IX's requirements relating to equity in athletics; (ii) review and recommend which women's teams DSU shall add pursuant to paragraph 7 of this Revised Consent Decree; (iii) monitor the roster sizes of women's sports' teams and evaluate whether such roster sizes provide meaningful participation for the Participants, taking into account the sport's competition rules, number of players required to compete, number of substitutes needed, and coach/athlete ratios, and any other relevant factors, which DSU commits to take steps to address; and (iv) consult on, review, and make recommendations on surveys to gauge student interest and ability in new women's sports to add, and on all matters relating to athletic equity.

(b) Specifically, the Committee shall review the 2022 survey, investigation, and the results thereof referenced in paragraphs 13 and 14 above and make recommendations to the Director of Athletics by September 15, 2022, or within 15 days of receiving in writing the information collected through the investigation and survey, whichever is later. DSU commits to considering the recommendations of the Gender Equity in Athletics

11

Committee.  DSU also commits to presenting to the full Board of Trustees the recommendations of the Gender Equity in Athletics Committee and shall provide notice to Plaintiffs' counsel when same has occurred.

(c)     The Committee shall maintain minutes of each meeting for the duration of this Revised Consent Decree.

16.     Within 45 days of the establishment of the Gender Equity in Athletics Committee, DSU shall, in consultation with the Committee, draft, approve, and post on the athletics website in a prominent and visible location a policy informing students of the process to request the addition of a new team.

17.     DSU will designate the Director of Athletics as the primary point of contact and consultation with the Gender Equity in Athletics Committee and for purposes of sharing information referenced in paragraphs 13 and 14.

18.     The Parties and their counsel shall not disclose any documents or information provided by each Party pursuant to this Revised Consent Decree that either Party designates as confidential information (defined below), except as provided for in subparagraph (c) below.

(a)     "Confidential Information" shall include any type of information either Party believes in good faith to constitute, contain, reveal, or reflect confidential, personal, sensitive personnel, financial, business

and/or proprietary information based upon a showing of good cause as articulated in *Pansy v. Stroudsburg,* 223 F.3d 722 (3d Cir. 1994).

(b)     All or any part of any material (including without limitation any information, document, thing, pleading, or testimony) provided by either Party may be designated as "Confidential Information" by either Party by marking the word "Confidential" on the material.

(c)     Documents or information designated as "Confidential Information" and/or any information derived therefrom may be disclosed or made available by counsel to either Party on a need-to-know basis, as follows:

(i)     attorneys of record in this litigation, members of their firms, associate attorneys, contract attorneys, paralegals, secretarial staff, clerical and other regular or temporary employees, and service vendors of such counsel (including outside copying services and outside litigation support services such as translators and interpreters);

(ii)     any non-party support services including, but not limited to, outside copying services, and document imaging and database services, trial consulting services, outside court reporting services and court reporters as may be reasonably necessary in connection with

monitoring compliance and enforcing the Revised Consent Decree entered by the Court;

(iii)     experts or consultants, together with their clerical personnel, who are retained by either Party's counsel in connection with monitoring compliance and enforcing this Revised Consent Decree entered by the Court, provided the person to whom such information is to be disclosed shall execute and deliver to the attorney of record making the disclosure a written Certificate of Confidentiality, in the form attached hereto as Exhibit A, before any documents or information is disclosed;

(iv)     the Court, its clerks and secretaries, and any court reporter retained to record proceedings before the Court; and

(v)     any other person upon whom the Parties agree in writing or upon order of the Court.

(d)     "Confidential Information" may be disclosed to the Court in connection with any filing or proceeding in this Litigation, but the party or person disclosing it shall cause the "Confidential Information" to be filed under seal in accordance with subparagraph (e).

(e)     Court records containing "Confidential Information" shall be filed by the Parties in accordance with Fed. R. Civ. P. 26, the Local Rules

and CM/ECF Administrative Procedures. Consistent with CM/ECF Administrative Procedure (G), all sealed documents must be filed electronically in CM/ECF. A certificate of service shall be included as an attachment to the sealed document. A redacted version of the sealed civil document shall be filed electronically, within 7 days after the filing of the original sealed document. Courtesy paper copies of sealed documents shall be filed with the Clerk's Office, however, courtesy copies of redacted versions of sealed documents shall not be filed, unless otherwise ordered. A motion to file documents under seal may be filed electronically unless prohibited by law. It is not necessary to file courtesy copies or redacted versions of medical records with the Clerk's Office. Delivery of a sealed paper courtesy copy to the Court shall be consistent with the practice of chambers, or delivered no later than the next business day if there are no special requirements.

19. DSU agrees that it will not retaliate against any person for lawfully opposing practices believed to violate Title IX, for lawfully providing information, assistance, or encouragement to Plaintiffs or their counsel in connection with this Litigation, or for lawfully assisting in efforts to enforce, determine, or ensure compliance with the Revised Consent Decree.

20.     If Plaintiffs' counsel have questions and/or concerns regarding DSU's compliance with the agreements set forth in this Revised Consent Decree or with documentation provided by DSU pursuant to this Revised Consent Decree (a "dispute"), Plaintiffs' counsel shall contact DSU's General Counsel and make a good faith effort to resolve the dispute.  DSU shall respond to Plaintiffs' counsel within 10 days of receiving written notice of the dispute and the Parties will make a good faith effort to resolve the question and/or concerns raised within 30 days of Plaintiffs' counsel's receipt of DSU's response.  If the Parties are unable to resolve a dispute within the 30-day period, Plaintiffs may present their dispute to Magistrate Judge Thynge, or her successor, for resolution through mediation.  If the Parties remain unable to resolve the dispute, either party may pursue appropriate relief from the U.S. District Court.  The Court retains jurisdiction for matters relating to this Revised Consent Decree.

21.     The terms of this Revised Consent Decree shall remain in force until: (1) September 1 of the academic year after the academic year in which DSU has asserted it has achieved full compliance with paragraphs 5 and 6 or 9, the process outlined in subsections 21(a)-(c) below has been completed and any disputes are resolved in favor of DSU's asserted compliance;[3] or (2) as outlined in subsection

---

[3] For example, if DSU sends Plaintiffs' Counsel a Compliance Notice at the end of the fifth year of the Revised Consent Decree (May 31, 2026), and the process outlined in (a)-(c) is completed in favor of DSU, the Revised Consent Decree terminates September 1, 2026; if the process is

21(d) with regard to early compliance. Upon DSU's assertion of compliance by written notice to Plaintiffs' counsel ("Compliance Notice"), the Parties will proceed as follows:

(a)     DSU will provide Plaintiffs' counsel with any documentation required by paragraph 12 that has not yet been provided to them ("Subsection (a) documentation"), such that Plaintiffs' counsel will have all documentation for the academic year in which DSU asserts it has achieved compliance.

(b)     Within 60 days of receipt of Subsection (a) documentation, Plaintiffs' counsel will assess DSU's assertion of compliance and communicate with DSU as to whether they agree or disagree with DSU's compliance. If Plaintiffs' counsel agree that DSU has achieved compliance with paragraphs 5 and 6 or 9, they shall provide written notice of their determination to DSU within the 60-day period identified in this paragraph 21(b). If Plaintiffs' counsel provide written notice of their agreement, the Revised Consent Decree shall terminate on September 1 of the academic year after DSU has asserted compliance, except as provided for in

---

completed in Plaintiffs' favor, DSU is not compliant and the Revised Consent Decree continues in force for at least another academic year.

paragraphs 15, 18, and 24, which obligations shall terminate as provided for therein, by consent of the Parties, or order of the Court.

(c) In the event Plaintiffs' counsel disagree with DSU that it has achieved full compliance, they will pursue the dispute resolution process set forth in paragraph 20. Notwithstanding any other provision of this Revised Consent Decree, in the event of a dispute, DSU shall not be relieved of its obligations under this Revised Consent Decree until the dispute is resolved, either by consent of the parties or order of the Court.

(d) <u>Early Compliance:</u>

(i) If DSU provides the Compliance Notice at the end of the complete academic year before the fifth or seventh academic year following entry of the Revised Consent Decree, then DSU shall provide any Subsection (a) documentation that has not yet been provided. If Plaintiffs' counsel disagree with DSU, Plaintiffs' counsel will pursue a dispute and subsection 21(c) applies.

ii. If Plaintiffs' counsel agree with DSU's assertion of compliance, Plaintiffs' counsel shall provide to DSU written notice of their agreement within 60 days of receiving the Compliance Notice and Subsection (a) documentation.

iii.     Whether or not Plaintiffs agree with DSU's assessment of compliance, DSU will provide Plaintiffs' counsel with Subsection (a) documentation for the full academic year following the academic year in which DSU asserted compliance for the purposes of determining if DSU maintained compliance for the following academic year.  Within 60 days of receiving the Subsection (a) documentation for the following academic year, Plaintiffs' counsel shall provide written notice to DSU advising as to whether it disputes that DSU maintained compliance for the following year.  If Plaintiffs' counsel finds DSU has not maintained compliance during that following academic year, the Revised Consent Decree will not terminate and DSU will either agree to withdraw its assertion of compliance or Plaintiffs' counsel will pursue the dispute resolution process set forth in paragraph 20.  In the event of a dispute, DSU shall not be relieved of its obligations under this Revised Consent Decree until the dispute is resolved, either by consent of the parties or order of the Court.  If Plaintiffs' counsel advises that it does not dispute that DSU maintained compliance, the Revised Consent Decree shall terminate on September 1 of the academic year after DSU provided the Compliance Notice, except as provided in paragraphs 15, 18, and

24, which obligations shall terminate as provided for therein, by consent of the Parties, or by order of the Court.

22. At such time as the Revised Consent Decree is terminated, the claims of the Plaintiffs, individually and as representatives of the Class, shall be dismissed and DSU will be released, acquitted, and discharged from any and all claims, actions, demands, judgments, damages, liabilities, or obligations arising out of the Title IX claims raised and addressed in this litigation until and including the date of Court approval of this Revised Consent Decree. Even after the expiration of this Revised Consent Decree, DSU will in good faith continue to endeavor to remain in compliance with Title IX. Similarly, Plaintiffs, individually and as representatives of the Class, are hereby released, acquitted, and forever discharged from any and all claims arising from and/or in any way related to this litigation until and including the date of this Order. This paragraph shall not in any way preclude the Plaintiffs, individually and as representatives of the Class, from enforcing provisions of this Revised Consent Decree and shall not preclude Class members who have Title IX claims that were neither raised in this lawsuit nor addressed in this Revised Consent Decree from raising and pursuing legal proceedings to address those claims. Neither does this paragraph in any way preclude future Class members from raising and pursuing any legal claims relating to Title IX compliance that became known and/or arose after the dismissal of this lawsuit.

23. Within ten (10) business days of the Court approval of the Revised Consent Decree, DSU shall publish this Revised Consent Decree in a conspicuous place on its primary athletics website.

24. DSU agrees to pay Plaintiffs' reasonable attorneys' fees and costs incurred in connection with this Litigation. DSU will pay said reasonable attorneys' fees and costs as memorialized by Judge Stark's July 19, 2016 oral order in this matter: "Plaintiffs shall, as they represent in the letter, use their best efforts to submit fee requests on an annual basis and Defendants shall respond in good faith to those requests in an appropriate and timely fashion." The Parties have selected April 1 as the date by which Plaintiffs' counsel will endeavor to submit their requests for fees and costs and May 1 as the date DSU will endeavor to respond. Upon termination of the Revised Consent Decree, Plaintiffs' counsel shall submit any remaining fees and costs that have not been paid. Plaintiffs' counsel shall provide counsel for DSU records reflecting their attorneys' fees and costs in connection with each submission. These records shall be marked confidential pursuant to Paragraph 18 above. The Parties agree that provision of these records shall not constitute a waiver of the attorney-client privilege. DSU's obligation to pay Plaintiffs' attorneys' fees as set forth in Paragraph 24 shall terminate only after DSU has fully paid all outstanding attorney fees and costs incurred by Plaintiffs' counsel for their work monitoring the Revised Consent

21

Decree up to and including the date on which the Revised Consent Decree is terminated pursuant to Paragraph 21 or by order of the Court.

25.    Upon the Court's entry of the Revised Consent Decree, the December 20, 2010 Consent Decree shall be deemed terminated such that the parties are no longer bound by the terms of the December 20, 2010 Consent Decree, and the Revised Consent Decree shall be the operative agreement between the parties.

[SIGNATURE PAGE FOLLOWS]

**CONSENTED TO:**

| **FOR THE PLAINTIFFS:** | **FOR DEFENDANT DSU:** |
|---|---|
| /s/ *Elizabeth Wilburn Joyce (#3666)* | /s/ *Clarissa R. Chenoweth-Shook* |
| Elizabeth Wilburn Joyce (#3666) | Kathleen Furey McDonough (# 2395) |
| Megan Ix Brison (#6721) | Clarissa R. Chenoweth-Shook (#5728) |
| PINCKNEY, WEIDINGER, URBAN & | POTTER ANDERSON & CORROON |
| JOYCE LLC | LLP |
| 2 Mill Rd. Suite 204 | 1313 N. Market Street, Sixth Floor |
| Wilmington, DE 19806 | P.O. Box 951 |
| (302) 504-1467 – Telephone | Wilmington, DE  19899-0951 |
| (302) 442-7046 – Facsimile | (302) 984-6000 – Telephone |
| ewilburnjoyc@pwujlaw.com | (302) 658-1192 – Facsimile |
| mixbriso@pwujlaw.com | kmcdonough@potteranderson.com |
| | cchenoweth@potteranderson.com |

Terry L. Fromson (*pro hac vice*)
WOMEN'S LAW PROJECT
125 S. 9th Street, Suite 300
Philadelphia, PA 19107
(215) 928-5771 – Telephone
tfromson@womenslawproject.org

*Attorneys for Defendant Delaware State University*

Adam E. Gersh (*pro hac vice*)
FLASTER GREENBERG PC
Commerce Center
1810 Chapel Ave. West
Cherry Hill, NJ 08002
(856) 382-2246 – Telephone
adam.gersh@flastergreenberg.com

Date:  March 23, 2022                    Date:  April 15, 2022

_____
UNITED STATES JUDGE
                Magistrate

23